977 A.2d 1089

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Clayton Leroy LISTON, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 4, 2009.

Decided Aug. 17, 2009.

Nancy Vernon, Esq., Hugh J. Burns, Jr., Esq., Philadelphia Dist. Attorney's Office, for the Com. of PA, appellant.

Dianne H. Zerega, Esq., for Clayton Leroy Liston, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

The Commonwealth appeals from the Superior Court's order remanding the matter to the trial court so that Appellee Clayton Leroy Liston may file a post-sentence motion *nunc pro tunc*. We hold that the Superior Court erred in declaring that a defendant who has been granted the right to file a notice of appeal *nunc pro tunc* shall also automatically be granted the right to file post-sentence motions *nunc pro tunc*. We further hold that the Superior Court's order impermissibly created a new exception to our decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). We vacate in part and affirm the judgment of sentence.

Appellee was charged in 2005 by Fayette County authorities with two counts each of possession of a controlled substance [1] and possession with intent to deliver a controlled substance,[2] and a single count of criminal conspiracy.[3] These charges stemmed from two separate incidents in 2004 when Appellee supplied cocaine to a Pennsylvania State Trooper acting in an undercover capacity. Appellee was tried before the Honorable John F. Wagner and a jury on August 2, 2005, and convicted of the above-enumerated offenses.[4]

On August 19, 2005, Appellee received an aggregate sentence of eighteen to thirty-six months incarceration. Appellee did not file either post-sentence motions or a notice of appeal.

1. 35 P.S. § 780–113(a)(16).
2. 35 P.S. § 780–113(a)(30).
3. 18 Pa.C.S. § 903.
4. The charges were consolidated for purposes of trial.

On December 14, 2005, Appellee filed a timely *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. Counsel was appointed to represent him and on February 6, 2006, appointed counsel filed an amended PCRA petition raising several claims alleging ineffective assistance of counsel, one of which was that trial counsel had been ineffective for failing to file a requested notice of appeal following entry of the judgment of sentence. Judge Wagner convened an evidentiary hearing and on May 31, 2006, issued an opinion and order reinstating Appellee's direct appeal rights based on a finding that trial counsel had failed to file the requested appeal. Although Judge Wagner took testimony on Appellee's remaining claims of ineffectiveness of counsel, Judge Wagner did not address them or issue rulings with respect to those claims.

Appellee filed a direct appeal to the Superior Court. Appellee raised one sufficiency claim and four claims of ineffective assistance of counsel. On January 8, 2008, the *en banc* Superior Court issued a published opinion. *Commonwealth v. Liston*, 941 A.2d 1279 (Pa.Super.2008). The Superior Court declined to address Appellee's ineffective assistance claims, relying on this Court's decision in *Grant*. In *Grant*, this Court held that claims alleging ineffective assistance of counsel should be deferred until the collateral stage of proceedings.[5] *Grant*, 813 A.2d at 738.

Instead of resting with a plain application of the rule in *Grant*, the Superior Court turned its attention to this Court's decision in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). In *Bomar*, this Court carved out an exception to the *Grant* rule and held that an appellate court may consider ineffective assistance claims on direct appeal only if the claims

5. *Grant* revised the rule established in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), wherein this Court held that claims of ineffective assistance of counsel had to be raised at the first stage of the proceedings at which the defendant is represented by new counsel to avoid waiver of those claims. The reasons for overruling *Hubbard* included the lack of a complete record on appeal and the improper recasting of an appellate court into the role of a fact-finder. *See Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 853–854 (2003).

were raised below, developed in the certified record, and definitively determined by the lower court. *Id.* at 854–55. Concluding that *Bomar's* reach should be extended, the Superior Court held that whenever a PCRA court reinstates a defendant's right to file a direct appeal, the PCRA court **shall also** issue an order permitting the defendant to file post-sentence motions *nunc pro tunc.* The Superior Court reasoned that such a procedural rule would conserve precious judicial resources because claims of ineffective assistance of counsel could be reviewed at an earlier stage of the proceedings, thereby obviating the necessity of a subsequent PCRA petition should the judgment of sentence be affirmed on direct appeal. *Liston,* 941 A.2d at 1284–85.

The Superior Court stated:

Therefore, in line with our decision today, henceforth, if the PCRA court determines that, in fact, appellate counsel was ineffective for failing to file a requested direct appeal and reinstates the petitioner's direct appeal rights nunc pro tunc, the court *shall also* reinstate the petitioner's right to file post-sentence motions or amended post-sentence motions nunc pro tunc. The petitioner can then raise whatever "other" claims of counsel ineffectiveness he/she wants to in post-sentence motions; the trial court can hold an evidentiary hearing, if warranted, perfect the record for review, and reach a final decision on the merits. In this way, the trial court's decision results in an appealable ruling, and the trial court will not be compelled to issue a merely "advisory" opinion. The record will also be complete so that this court may review the appellant's ineffectiveness claims on the ensuing direct appeal, consistent with [*Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003)]. This practice will preserve valuable judicial time and resources, and save the appellant from having to file another, duplicative PCRA petition raising the identical claims later in the process.

*Liston,* 941 A.2d at 1284–85 (emphasis added). The Superior Court then addressed Appellee's sufficiency claim and, after ruling that it was meritless, relinquished jurisdiction and

remanded the matter so that Appellee could file post-sentence motions *nunc pro tunc. Id.*

The Commonwealth filed a timely Petition for Allowance of Appeal and on October 31, 2008, we granted review of three issues:

a. Did the Superior Court contradict *Commonwealth v. Grant* in purporting to create its own new exception to that case?

b. Did the Superior Court contradict *Commonwealth v. Reaves* by holding that any PCRA petitioner entitled to a *nunc pro tunc* direct appeal is automatically entitled to *nunc pro tunc* post sentence motions as well, without proving prejudice?

c. Did the Superior Court usurp this Court's exclusive authority to create procedural rules under Article V, § 10(c) of the state constitution?

The issues in this case present questions of law, thus our standard of review is plenary and our scope of review is *de novo. Commonwealth v. King,* 595 Pa. 685, 939 A.2d 877, 880 (2007).

The Commonwealth first asserts that, by mandating that permission to file post-sentence motions be conferred automatically whenever a defendant succeeds in having his right to appellate review reinstated, the Superior Court contravened our decision in *Grant.* The Commonwealth notes that in *Grant* this Court held the authority to make exceptions to its rule rests specifically in this Court. *Grant,* 813 A.2d at 738 n. 14 (stating that "this Court may choose to create an exception to the general rule"). Further, in *Commonwealth v. O'Berg,* 584 Pa. 11, 880 A.2d 597, 602 (2005), this Court reiterated that the power to delineate exceptions to the *Grant* rule rests solely in this Court.[6]

The Commonwealth further complains that the Superior Court's directive also conflicts with *Commonwealth v.*

---

6. In *O'Berg,* this Court reversed the decision of the Superior Court delineating a "short sentence" exception to *Grant. O'Berg,* 880 A.2d at 602.

*Reaves,* 592 Pa. 134, 923 A.2d 1119 (2007). In *Reaves,* this Court declared that the failure to file post-sentence motions does not fall within the limited ambit of situations where a defendant alleging ineffective assistance of counsel need not prove prejudice to obtain relief.[7] *Id.* at 1132. According to the Commonwealth, the Superior Court's decision eviscerates the *Reaves* rule because a defendant now has the right to file post-sentence motions automatically, without having either to request such relief or prove that he or she is entitled to it because of the ineffective assistance of prior counsel.[8] The Commonwealth asserts that in addition to undermining the decision in *Reaves,* the Superior Court's ruling herein creates an exception to the Rules of Criminal Procedure, specifically Rule 720(b), by "effectively convert[ing] optional post sentence motions into compulsory post sentence motions where a *nunc pro tunc* appeal is granted." Commonwealth's Brief, 9. On this point, the Commonwealth takes issue with the Superior Court's conclusion that its new rule is similar to the *Grant* exception set forth in *Bomar.* The Commonwealth argues that under *Bomar,* the filing and resolution of post-sentence ineffectiveness claims is not automatic. Rather, asserts the Commonwealth, the trial court has discretion to defer review of such claims until the post-conviction stage of the proceeding. Commonwealth's Brief, 9.

Another unintended consequence of the Superior Court's decision, according to the Commonwealth, arises in the situation where counsel fails to identify existing claims of ineffec-

7. In *Reaves,* this Court identified three situations in which a defendant was excused from having to prove prejudice in order to obtain relief on a claim of ineffective assistance of counsel. They were: "(1) when counsel fails to file a requested direct appeal; (2) when counsel neglects to file a requested petition for allowance of appeal with this Court; and (3) when counsel fails to file a court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal and that failure results in the waiver of all direct appeal claims." *Reaves,* 923 A.2d at 1125 (citations omitted).

8. In order to obtain relief on a claim alleging ineffective assistance of counsel, a litigant must prove that the claim underlying the claim of ineffectiveness has arguable merit, that counsel acted unreasonably, and that as a result of counsel's error, prejudice resulted. *See Commonwealth v. Daniels,* 963 A.2d 409, 419 (Pa.2009).

tiveness for purposes of a post-sentence motion, thereby waiving them under the provisions of the PCRA. *See* 42 Pa.C.S. § 9544(b) (stating that issues that could have been raised previously are waived for purposes of the PCRA). The resulting "waiver trap," the Commonwealth argues, will require subsequent counsel to "layer" any ineffectiveness claims, a requirement that the *Grant* decision was intended to eradicate. Commonwealth's Brief, 10.

In addition, the Commonwealth challenges the Superior Court's assertion that its holding will "preserve valuable judicial time and resources." *Liston,* 941 A.2d at 1285. The Commonwealth characterizes this purported benefit as illusory because it merely provides defendants with an *additional* collateral attack on their convictions. Commonwealth's Brief, 11.

Finally, the Commonwealth refers to the Pennsylvania Constitution, which provides, in relevant part, that this Court "shall have the power to prescribe general rules governing practice, procedure, and the conduct of all courts." Pa. Const. Art. V, § 10. This power to establish rules of procedure rests exclusively in this Court. *See Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 736 (2001). The Commonwealth asserts that the rule set forth in *Grant* was procedural and thus, under the Pennsylvania Constitution, only this Court has the power and authority to fashion exceptions to it.

In response, Appellee asserts that the Superior Court's decision should be affirmed "because it . . . correct[s] a gap in the system and . . . permit[s] counsel to pursue a prompt disposition of the claims of the [defendant]." Appellee's Brief, 9. Appellee argues that under the Superior Court's decision a defendant will be able to obtain review of any ineffectiveness claims without the unnecessary delay occasioned by the inability to raise those claims on direct appeal because there has been no hearing on them in the lower court.

After a careful review of the Superior Court's opinion, the applicable law, and the briefs of the parties, we conclude that the Superior Court overstepped its authority in

this case. The panel determined that all defendants who have been granted the right to file an appeal *nunc pro tunc* also must be granted an *automatic additional right* to file post-sentence motions *nunc pro tunc.* Clearly, the Superior Court's holding creates an exception to the *Grant* rule in that it permits a defendant to obtain what is essentially collateral review even before a direct appeal has been litigated. In *Grant* we expressed a preference that review of ineffectiveness claims be deferred until the post-conviction collateral review stage of a proceeding because we recognized that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffectiveness." 813 A.2d at 737–38. Thus we concluded that "[d]eferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." 813 A.2d at 738. While we created an exception to *Grant* in our decision in *Bomar*, we have explicitly reiterated the general rule in *Grant* and further directed that any exception to that general rule be accomplished only by this Court:

> Accordingly, we believe the best course of action is to reaffirm our decision in *Grant* and reiterate that, as a general rule, claims of ineffective assistance of counsel will not be entertained on direct appeal. *Moreover, we take this opportunity to disapprove of any decisions of the Superior Court that are to the contrary.* For these reasons, we do not believe there is a need to create a "short sentence" exception to the general rule announced in *Grant.* Indeed, we fear doing so would undermine the very reasons that led to our decision in *Grant* in the first instance.

*O'Berg,* 880 A.2d at 602 (emphasis added).

As we did in *O'Berg,* we conclude that the Superior Court's decision in this case is capable of undermining the very purpose and policy underlying *Grant.* One of the reasons propounded by the Superior Court was to conserve precious judicial resources. *Liston,* 941 A.2d at 1285. While such a goal is laudable, the prospect that the Superior Court's decision will have the intended effect is doubtful. A defendant

who is granted an opportunity to file post-sentence motions because his attorney failed to file a requested appeal maintains the right to seek post-conviction relief under the PCRA after his direct appeal is finally determined. This is an opportunity that most, if not all, defendants likely will take. Thus, the Superior Court's decision grants some defendants an additional automatic opportunity to attack their convictions based on claims of ineffective assistance of counsel, a recourse not available to all defendants. *See Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1030 (2007) (Castille, C.J., concurring) (in a concurring opinion, then-Justice Castille commented that it is unfair to afford an additional avenue of relief to certain defendants).

Having found merit in the first basis upon which the Commonwealth challenges the Superior Court's decision, we need not address the Commonwealth's remaining claims. It is the policy of this Court to avoid deciding a matter on constitutional grounds if the issue can be decided on other grounds. *Commonwealth v. Long,* 592 Pa. 42, 922 A.2d 892, 897 (2007). Once more, however, we caution the Superior Court with regard to its application of *Grant* and its progeny. When the panel in this case afforded all defendants who have been granted the right to file an appeal *nunc pro tunc* the automatic right to file post-sentence motions *nunc pro tunc,* it not only contradicted our decisions in *Grant* and *O'Berg,* it essentially attempted to promulgate a new rule of criminal procedure. The Superior Court's decision to afford additional rights to a specific class of criminal defendants is particularly problematic. Before a mandatory rule of procedure affecting an untold number of cases is issued, it should be studied and approved by one of our procedural rules committees, and then considered by this Court.

 Accordingly, we vacate that part of the Superior Court's order that remanded the matter so that Appellee could file post-sentence motions.[9] We affirm that part of the Supe-

9. Our holding should not be construed as prohibiting a PCRA court from reinstating a defendant's right to file post-sentence motions *nunc pro tunc.* If a defendant successfully pleads and proves that he was

rior Court's order that dismissed Appellee's ineffectiveness claims, without prejudice to his right to pursue such claims on collateral review under *Grant.* Finally, we affirm the judgment of sentence.[10]

Superior Court's order vacated in part; judgment of sentence affirmed.

Justice TODD and Justice McCAFFERY did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, files a concurring opinion in which Justices SAYLOR and EAKIN join.

Justice BAER, files a concurring opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion, with the exception of its characterization of the Superior Court's error as "attempt[ing] to promulgate a new rule of criminal procedure" outside of the formal rule-making process. *See* Majority opinion at 17 & 19, 977 A.2d at 1093 & 1094. The Majority correctly disapproves of the *sua sponte* decisional "rule" the Superior Court adopted, which would require trial courts to afford criminal defendants the opportunity to forward claims of ineffectiveness in addition to claims of trial court error on direct appeal, *i.e.*, hybrid, unitary review, whenever they determine that a PCRA[1] petitioner has proven entitlement to reinstatement of

deprived of the right to file and litigate said motions as a result of the ineffective assistance of counsel, a PCRA court is free to grant such relief. Presumably, since post-sentence motions are optional, *see* Pa. R.Crim.P. 720(B), rarely will counsel be deemed to have been ineffective for failing to file them except, for example, when the claim involves the discretionary aspects of sentence or a challenge to a verdict on weight of the evidence grounds, claims which must be raised in the trial court to be preserved for purposes of appellate review. *See, e.g., Commonwealth v. Ahmad,* 961 A.2d 884, 886 (Pa.Super.2008) (holding that in order to preserve for appellate review an issue involving the discretionary aspects of sentence, the claim first must have been raised in a post-sentence motion or presented to the trial court). *See also* Pa.R.Crim.P. 607 (regarding preservation of a claim challenging the weight of the evidence).

**10.** Appellee did not challenge the Superior Court's order rejecting his sufficiency claim.

**1.** Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

direct appeal rights *nunc pro tunc.* In my judgment, the Superior Court's error did not involve a usurpation of this Court's rulemaking role, but rather, a good faith but fundamental misapprehension of the governing principles this Court has laid out in cases such as *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), and *Commonwealth v. O'Berg,* 584 Pa. 11, 880 A.2d 597 (2005), when faced with circumstances that differed from those discussed in our precedent. I realize that the Commonwealth poses the error as a supervisory one implicating this Court's exclusive rulemaking role, but I view that as a sound strategic posture deriving from the Commonwealth's recognition that its chances for review were enhanced by casting its claims as involving more than mere error review.[2]

I write not only to explain my view of the nature of the Superior Court's error but also to express my belief that the circumstances in this case provide a greater and additional reason for this Court to counsel the lower courts not to take affirmative steps to accommodate unitary review under the so-called *Bomar* exception to *Grant.* In my judgment, the mischief we are called upon to remedy is much more a result of the unintended consequences of *Bomar* than a result of the Superior Court losing sight of its institutional role and seeking to adopt perceived efficiencies which, unfortunately, failed to fully appreciate other, competing values. Contrary to the Superior Court's conclusion, our intent in *Bomar* was never to

2. The Fayette County District Attorney's office failed to file a Brief before the *en banc* panel of the Superior Court. We have previously noted that a decision not to file a brief in a matter involving an important legal question does a disservice to the courts of this Commonwealth. *See Commonwealth v. Vandivner,* 599 Pa. 617, 962 A.2d 1170, 1173 n. 1 (2009). This failure is especially pointed in this case, since the Commonwealth then filed a Petition for Allowance of Appeal seeking to have the "error" of the Superior Court corrected. I recognize that many county prosecutors' offices face severe budget constraints. But the designation of this case for *en banc* consideration put the District Attorney on notice of its perceived importance. If the Commonwealth had filed a brief before the Superior Court, the Superior Court may have reached a different result and spared the need for further review here.

create a "right" to hybrid review. For the reasons I discuss below, and consistently with this Court's signal in *Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119 (2008), I would formally limit *Bomar* to its pre-*Grant*, unitary review facts, and I would direct trial judges and the Superior Court not to create or indulge unitary, hybrid review in the post-verdict and direct appeal context, unless such review is accompanied by an express, knowing and voluntary waiver of PCRA review. This approach would allow for acceleration of collateral review in some instances, but would not, as would happen here under the Superior Court's rule, arbitrarily afford certain defendants both accelerated and multiple rounds of collateral review.[3]

The Superior Court in this case, sitting *en banc*, undertook to craft an extension of this Court's decision in *Bomar*, a capital direct appeal in which this Court passed upon claims of ineffective assistance of counsel which were fully litigated and decided in the court below solely because the trial court proceedings in *Bomar* were conducted at a time prior to this Court's decision in *Grant*, *i.e.*, when ineffectiveness claims were required to be raised immediately by new counsel, under pain of waiver pursuant to *Commonwealth v. Hubbard*, 472

**3.** In his Concurring Opinion, Mr. Justice Baer characterizes this position as requiring a "forfeiture" of PCRA review and, later, claims that it operates as a "per se" forfeiture. Concurring opinion at 30–33, 977 A.2d at 1101, 1102. The word "forfeiture" is inaccurate. A defendant serving a significant sentence has an of-right entitlement to both a single direct appeal and a single, full PCRA proceeding. The prospect of serial review is limited both substantively and as a practical matter. *See Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 524 (2001) (explaining that the practical effect of the one-year jurisdictional time requirement of the PCRA is to limit the opportunity for collateral relief to a single, counseled petition). The unitary review I have described effectively allows for that full round of direct review and an accelerated, full round of PCRA review in a single proceeding, in an appropriate case, while making clear that such unitary review is not designed to arbitrarily provide what is in effect a **third** round of review for certain defendants. Meeting the obvious issue square-on and requiring a defendant who requests such accelerated review of collateral claims to recognize that it exhausts his of-right entitlement to pursue PCRA relief does not forfeit PCRA review; it accelerates it. In short, the forfeiture Justice Baer speaks of involves an assumed "right" to multiple, full collateral attacks which has no principled basis in the Pennsylvania collateral review construct.

Pa. 259, 372 A.2d 687 (1977).[4] The Superior Court adopted a "rule" **requiring** a similar form of unitary review, as of right, governing cases where any PCRA defendant proves an entitlement to reinstatement of his direct appeal rights *nunc pro tunc*. The Superior Court's rule is a significant extension of the decision I authored in *Bomar*. *Bomar* merely accepted the *Hubbard*-era record presented to it and decided the hybrid case. As I have repeatedly cautioned, however, *Bomar's* decision to review the direct appeal and ineffectiveness claims on direct appeal there "did not purport to approve such a review paradigm prospectively, as a post-*Grant* matter. Rather, this Court merely took the *Hubbard*-era record as we found it in *Bomar*, and proceeded to determine if direct review, or a pointless deferral to PCRA review, of the collateral claims was appropriate." *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1030–31 (2007) (Castille, J., joined by Saylor, J., concurring) (*quoting* in part *Commonwealth v. O'Berg*, 584 Pa. 11, 880 A.2d 597, 603 (2005) (Castille, J. concurring)).[5, 6]

In contrast, the Superior Court here took a post-*Grant* case that was not ripe for hybrid decision, affirmatively required creation of a hybrid record and issuance of a hybrid opinion, and adopted a rule that would require trial courts in future cases to indulge hybrid, unitary review. In so doing, the Superior Court failed to account for this Court's post-*Grant* decisional law, failed to recognize the competing values at stake, and failed to appreciate that its stated goal of efficiency

**4.** In *Hubbard,* this Court directed new counsel to raise claims of prior counsel ineffectiveness at the first opportunity after new counsel was appointed, including direct review.

**5.** I note that Chief Justice Cappy, who also wrote separately in *Rega,* indicated that he shared the concern outlined in my Concurrence. 933 A.2d at 1029 (Cappy, C.J., concurring).

**6.** Justice Baer notes that "the *Bomar* decision itself … set forth no forfeiture [sic] requirement." Concurring opinion at 31, 977 A.2d at 1102. Respectfully, as developed in the text, *Bomar* accepted, and was limited, to the *Hubbard*-era facts presented to the Court and did not purport to set forth an approved, extra-PCRA, hybrid review paradigm for cases litigated after *Grant* was decided.

would be undermined by its creation of multiple rounds of collateral attack.

In this case, appellee filed a PCRA petition seeking to have his direct appeal rights reinstated *nunc pro tunc* as well as raising various claims of trial counsel's ineffectiveness. The PCRA court held an evidentiary hearing, at which evidence was taken regarding counsel's failure to file a direct appeal as well as trial counsel's conduct at trial.[7] At the conclusion of the proceedings the PCRA court granted appellee *nunc pro tunc* relief and did not issue any rulings with respect to the ineffectiveness claims.

Presented with this situation, the Superior Court raised the question of whether it should address the ineffectiveness claims as "the ineffectiveness claims [were] being raised on collateral review" consistent with *Grant. Commonwealth v. Liston*, 941 A.2d 1279, 1283 (Pa.Super.2008). And, the panel noted, "as in *Bomar*" there was a complete record respecting the ineffectiveness claims, which "can be addressed when the collateral review remedy granted is reinstatement of direct appeal rights." *Id.* The Superior Court then went on to observe that if the PCRA court had "addressed the claims in an opinion, there would be an adequate record for our review on [direct] appeal." *Id.* (*citing Bomar*). Such a conclusion was guided by its own precedent wherein it had previously reviewed a claim of ineffectiveness on direct appeal when the PCRA court granted the petitioner's request to reinstate his direct appeal rights *nunc pro tunc,* and the PCRA court had reviewed and resolved the ineffectiveness claim during the PCRA proceeding. *See Commonwealth v. Miller,* 868 A.2d 578 (Pa.Super.2005). Notably, the *Miller* court proceeded in such a manner and addressed the fully developed ineffectiveness claims on direct appeal in the belief that doing so was consistent with this Court's directive in *Bomar. Id.* at 581 ("The Supreme Court carved out an exception to *Grant* in

7. As I explain below, the trial court was obliged to develop a record on the claims of trial counsel ineffectiveness under Superior Court precedent pre-dating *Grant. See Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982) (*en banc*).

*Bomar,* permitting review of ineffectiveness claims on direct appeal where a sufficient record concerning the claims had been established. Thus, ineffectiveness claims that were developed in the PCRA court may be reviewed in the *nunc pro tunc* direct appeal, along with any other appealable claims the appellant chooses to raise.") (citations omitted).

In this case, the Superior Court correctly concluded that it was facing untraveled territory—not quite *Bomar* nor *Miller,* since the PCRA court did not resolve the ineffectiveness claims—but not quite *Grant,* since the PCRA court held an evidentiary hearing on the claims of ineffectiveness. Thus, it turned to its own precedent for further guidance.

The Superior Court explained that in *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982) (*en banc*), the court confronted the proper scope of review permitted a post-conviction hearing court under the Post–Conviction Hearing Act ("PCHA") when it determined that the petitioner had been denied his direct appeal rights. In *Miranda,* the Superior Court concluded that the "PCHA court must address the other claims (i.e., ineffectiveness claims) raised in the PCHA petition when it is necessary to complete the record for appellate review; but under these circumstances, the PCHA court is merely functioning as an evidentiary tribunal.... The PCHA court is to see to it that the record is made complete on these issues for the purpose of review in the appellate court on the *nunc pro tunc* appeal." *Id.* at 1137–38. According to the *Miranda* court, proceeding in such a way would avoid the further complication or delay that would result if the appellate court ordered a remand for an evidentiary hearing or a ruling on the remaining claims. *Id.* at 1139.

Returning to this case, the *Liston en banc* panel recognized that *Miranda* was decided at a time when *Hubbard* was in force, and further noted that the process for raising ineffectiveness claims had changed when *Grant* overruled *Hubbard.* The court, however, believed that the concerns underlying the decision in *Miranda* "with judicial economy and efficiency remain[ed] valid." *Liston,* 941 A.2d at 1283. Therefore, following its own *Miranda* case, the Superior Court concluded

that reinstating the right to file post-sentence motions at the time the court reinstated the right to file a direct appeal *nunc pro tunc* would serve the judicial economy and efficiency interests the *Miranda* court sought to promote.

I understand that in crafting the remedy, the Superior Court believed it was being faithful to our *Bomar* decision [8] as well as its own precedent. *See Miller supra.* Indeed, the panel essentially undertook to have the trial court make the case ready for *Bomar*-style unitary review treatment. But the fundamental flaw in the Superior Court's reasoning was its conclusion that a decision such as *Miranda,* which was powered by *Hubbard,* should have the same force following this Court's decision in *Grant,* and our subsequent cases explicating *Grant.* Applying *Miranda* in the post-*Grant* setting gives vitality and primacy to hybrid, unitary review on direct appeal, precisely the type of procedure that *Grant* sought to prevent. Additionally, the Superior Court failed to account for other concerns in this area.

Specifically, the Superior Court ignored the concerns that pre-PCRA hybrid review raises and that I most recently outlined in my concurring opinion in *Commonwealth v. Rega, supra.* Therein, I noted that allowing such claims to be forwarded on direct review leads to avoidable delay, abuse, arbitrariness, and complication. Generally, my concerns were that unitary review builds unnecessary delay into the direct review process, which also increases the potential for abuse, breeds illogical and unfair results by arbitrarily allowing one class of defendants a second round of collateral review, and fosters the requirement that defendants raise "layered" claims of ineffectiveness for purposes of collateral review. *Id.* at 1032–33.[9]

**8.** Indeed, in extending the grant of relief to include the *nunc pro tunc* filing of post-sentence motions, the Superior Court stated as much when it said, "[t]he record will also be complete so that this court may review the appellant's ineffectiveness claims on the ensuing direct appeal, **consistent with** *Bomar.*" *Liston,* 941 A.2d at 1285 (emphasis added).

**9.** Justice Baer states that he is "not advocating that each PCRA petitioner be afforded two rounds of collateral review," but only supports

These concerns can be alleviated by following the statutory scheme authorized by the Legislature, which permits a direct appeal followed by a single collateral attack, via the PCRA, as of right. "[A]ny such unitary review [on direct appeal], should be a substitute for, and not an advance supplement to, PCRA review." *Id.* at 1033. These additional concerns and potential consequences outweigh the judicial efficiency and economy interest that the Superior Court perceived would result from the creation of a hybrid review **requirement** in certain direct appeals.

Significantly, the Superior Court also did not have the benefit of this Court's recent decision in *Commonwealth v. Wright, supra,* a case arising under the pre-*Grant* framework. In *Wright,* this Court confronted the question of whether the ineffectiveness claims were cognizable on direct appeal and, in my view, correctly concluded that the *Bomar* exception applied and allowed review of claims of ineffectiveness to be forwarded on direct appeal as the case arose before this Court's mandatory directive in *Grant.* A majority[10] of this

hybrid review in those cases in which the trial court has reviewed ineffectiveness claims "in its sound discretion." Concurring opinion at 32, 977 A.2d at 1102. Respectfully, this view neither attempts to square itself with the PCRA nor does it address the fundamental question of arbitrariness. On the latter point, most, if not all, defendants would like as many avenues of review (including new lawyers with each round) as possible. It is difficult to see how it could **ever** be fair to allow some, but not all, of such defendants an extra round of attack. Certainly, the PCRA does not act so arbitrarily: the rules there apply to all defendants. Furthermore, this Court has previously cautioned against the vesting of such discretion in the courts because it may yield "inconsistent results and uneven justice." *Cf. Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775, 779 (2005) (confirming that the requirement to file a statement of matters complained of on appeal is absolute, since otherwise, the appellate courts may simply review issues on appeal in their discretion and such discretion yields "inconsistent results and uneven justice"). It is notable that Justice Baer never identifies the substantive concerns that would properly cabin the exercise of discretion which is the core of his rule.

**10.** Although *Wright* was a 3–1 decision because three of the Justices hearing oral argument were no longer on the bench at the time the opinion was filed, this Court has been clear that the standard for determining whether an opinion has binding effect is whether a majority of the participating Justices joined in the opinion. *Commonwealth v. Mason,* 456 Pa. 602, 322 A.2d 357, 358 (1974).

Court also indicated that it would approve of the position that I forwarded in *Rega* when it stated, "Prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks." *Wright*, 961 A.2d at 148 n. 22.[11]

For these reasons, like the Majority, I agree that the Superior Court's remedy is in error. I also agree with the Majority's observation that the mandatory procedure set forth by the Superior Court in this case is neither commanded nor authorized by this Court's decision in *Grant*, and indeed, undermines that decision.

I would go farther than the Majority, however, and consistently with *Wright*, I would explicitly limit *Bomar* to *Hubbard*-era cases, and make clear that there is no "*Bomar* exception" to *Grant*. The Superior Court's opinion in this case, which applies *Bomar* to a new set of facts and, thus, extends its reach, exemplifies an unintended and unauthorized consequence arising from *Bomar's* continued application in the post-*Grant* setting and fails to take into account this Court's shift away from *Hubbard*-era unitary review and the concerns previously discussed. I have also recognized that unitary review may be appropriate under limited circumstances in order to provide the immediate vindication of a clear claim and noted that there is no such current system in place allowing for such a procedure. *Rega*, 933 A.2d at 1033. Consistently with this Court's approval in *Wright*, however, I would permit hybrid review only when the request for such review is accompanied by an express, knowing and voluntary waiver of further PCRA review. Unless and until we take such steps, we will not be able to give this Court's corrective decision in *Grant* its full effect consistently with the terms of the PCRA.

**11.** Justice Baer suggests that the observation in *Wright* was *dicta* because that case involved a direct appeal from the imposition of a sentence of death. Concurring opinion at 3. But *Bomar* itself, and all of the other capital cases applying the so-called *Bomar* exception, likewise were direct capital appeals.

Finally, I recognize that Justice Baer argues that it is inappropriate to address the effects of *Bomar* upon continuing post-verdict practice in this appeal. Indeed, Justice Baer suggests that the only proper time to visit that subject must await a case where *Bomar* hybrid review has occurred and the defendant has proceeded to PCRA review. Concurring opinion at 31–33, 977 A.2d at 1102–03. I respectfully disagree that we are obliged to allow unintended and problematic applications of *Bomar* to spin out of control.[12] *Bomar* was a rule of our own creation, arising in a case where the hybrid review below occurred solely because of *Hubbard.* The parties in *Bomar* did not argue the effect of *Grant,* much less did they argue the prospective effect of *Bomar* itself on cases—unlike *Bomar,* but like the very case *sub judice*—litigated under the *Grant* paradigm, rather than under the *Hubbard* rule. Nor did *Bomar* purport to authorize hybrid, unitary review in post-*Grant* cases.

The issue in this case directly implicates the proper effect *Bomar* can be said to have on direct appeals and the post-verdict motions practice facilitating those appeals. In addition, the effect of authorizing trial courts to "apply" *Bomar* and permit unitary, hybrid review in these cases is readily apparent and inescapable. There is no reason, consistent with the PCRA, to authorize trial courts to arbitrarily permit an extra round of collateral attack for some but not all defendants; no rational, fair rule of limitation has been offered to warrant placing our imprimatur upon this unauthorized extension of *Bomar;* and this Court has the exclusive power to

---

12. In fact, as a further example of the necessity that this Court act promptly, the Superior Court recently invoked *Bomar* and *Liston* to create yet another exception to *Grant* in cases where the defendant is found in contempt of a PFA order, citing the *Liston* policy of "judicial economy." *See Commonwealth v. Moore,* 978 A.2d 988, 993, 2009 WL 2085686, *4 (Pa.Super.2009) ("Accordingly, where a defendant has been found in violation of a PFA, is sentenced pursuant to 23 Pa.C.S.A. § 6114(b), and alleges ineffectiveness of counsel, judicial economy may be best served by the PFA court conducting a post-sentence *Bomar* evidentiary hearing on a defendant's claims of ineffective assistance of counsel.").

supervise such procedural matters. We should take the bull by the horns and correct the problem now.[13]

Justice SAYLOR and Justice EAKIN join this concurring opinion.

Justice BAER, concurring.

I join the Majority Opinion to the extent it holds that the Superior Court erred in mandating that trial courts grant the filing of post-sentence motions *nunc pro tunc* in each case in which a defendant's direct appeal rights are reinstated. As the Majority recognizes, this holding improperly affords an enumerated class of defendants *i.e.*, those who have had their direct appeal rights reinstated, the opportunity to raise claims of trial counsel ineffectiveness on direct appeal in contravention of our decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which held that, generally, such claims should be deferred to collateral review. I write separately, however, to disassociate myself from the Majority's characterization of the Superior Court's holding as "attempt[ing] to promulgate a new rule of criminal procedure," Op. at 19, 27–29, 977 A.2d at 1093, 1099–1100, and to provide counterpoint to Chief Justice Castille's Concurring Opinion advocating the abrogation of the exception to *Grant* created in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). I believe the *Bomar* exception remains good law, and the Superior Court's decision herein is an attempt, albeit an unwarranted one, to have the instant case fall within that narrow exception.

As to my first point, a fair review of the Superior Court's opinion reveals that the court was not promulgating a new rule of criminal procedure, but rather was evaluating a previous decision of that court, which addressed the issue of a trial

13. In light of the expressions by a majority of the Court in *Wright,* and a majority of the Court in this case, I would refer this matter to the Criminal Procedural Rules Committee with directions to consider and recommend measures to account for the identified concerns with whether, and under what circumstances, hybrid, unitary review should be permitted on post-verdict motions. I have been authorized to state that Madame Justice Greenspan agrees that the matter should be referred to the Criminal Procedural Rules Committee.

court's scope of review in a collateral proceeding when one of the remedies sought and granted was the reinstatement of the right to a direct appeal. *See Commonwealth v. Liston,* 941 A.2d 1279, 1281–83 (Pa.Super.2008) (examining the vitality of the Superior Court's previous decision in *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982), which addressed whether the trial court in a collateral proceeding is precluded from reaching the merits of additional issues raised by the defendant once the trial court grants a direct appeal *nunc pro tunc*).

Secondly, I note my respectful disagreement with the view taken in Chief Justice Castille's Concurring Opinion, wherein he asserts that this Court should no longer recognize a *"Bomar* exception to the rule of *Grant,"* permitting defendants to raise collateral claims on direct appeal, unless the defendant expressly forfeits his right to PCRA review *via* the execution of a knowing and voluntary waiver of collateral review. Concurring Opinion at 21–22, 977 A.2d at 1096. While the Chief Justice has previously taken this position in his responsive opinions in *Commonwealth v. O'Berg,* 584 Pa. 11, 880 A.2d 597 (2005), and *Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997 (2007), I feel compelled to highlight that a majority of this Court has never squarely addressed the issue. Further, the *Bomar* decision itself, which has never been abrogated or modified by this Court, set forth no such forfeiture requirement.

I acknowledge that in footnote 22 of our recent decision in *Commonwealth v. Wright,* 599 Pa. 270, 961 A.2d 119 (2008), the Court cited Chief Justice Castille's Concurring Opinion in *Rega,* as follows:

Prolix collateral claims should not be reviewed on postverdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks.

*Id.* at 148 n. 22. This statement, however, amounts to nothing more than *dicta* because *Wright* was a direct appeal from the imposition of a sentence of death. Thus, the parties had no reason to raise or brief the issue of what review a PCRA petitioner is entitled under circumstances where a trial court,

employing the *Bomar* exception, has addressed a claim of ineffective assistance of counsel on direct appeal.

As I recognized in my Concurring Opinion in *Wright:*

I agree with the observation that "post-verdict motions should not become an accepted repository for laundry lists of collateral-appropriate complaints...." Maj. Op. at 320, 961 A.2d at 148, (quoting *Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1032–33 (Pa.2007) (Castille, J., concurring, joined by Saylor, J. concurring)). Nevertheless, this Court has previously provided an exception to the holding in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (Pa.2002), delaying claims of counsel ineffectiveness until PCRA review, and allowed review of claims of ineffectiveness on direct appeal that were raised and addressed by the trial court on post-verdict motions, *see, Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (Pa.2003). The Court, however, has never held that such process would result in waiver of subsequent full PCRA review. To the extent that footnote 22 attempts to change our jurisprudence in *dicta* supported only by cites to two concurring opinions, I respectfully disagree. I believe our established case law permits the review of claims under the *Bomar* exception without affecting a defendant's right to seek PCRA relief. Of course, in accordance with well-established judicial principles, claims that have been previously litigated at the time the PCRA is filed are barred. 42 Pa.C.S. § 9543(a)(3).

961 A.2d at 158–59.

To be clear, I am not advocating that each PCRA petitioner be afforded two rounds of collateral review. In the vast majority of cases, our decision in *Grant* clarifies that claims of ineffective assistance of counsel are to be deferred until collateral review proceedings. The *Bomar* exception is only satisfied where the ineffectiveness claims were presented to the trial court, which, in its sound discretion, chose to address them on direct appeal; the trial court held an evidentiary hearing thereon; and the trial court ultimately ruled on the merits of the ineffectiveness claims in its opinion. Only in a case where all of this occurs, and a petitioner subsequently

files a PCRA petition after his judgment of sentence becomes final, will the issue of the proper scope of collateral review under these peculiar circumstances arise. These conditions are simply not present in the matter now before this Court.

Accordingly, I respectfully caution against ruling upon this issue until it is raised, briefed, and argued by the parties in the appropriate case. *See Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95, 108 n. 15 (2007) (holding that "[w]e find it ill-advised, generally, to consider substantial questions not squarely presented and fully argued by the parties below and before this Court."). Absent a "real world" premise, we cannot begin to anticipate and analyze the peculiar positions advanced by thoughtful parties. Thus, it is inappropriate for this Court to hold that a PCRA petitioner *per se* forfeits his entire collateral review when a trial court exercises its discretion, for what one may presuppose is an appropriate reason, to dispose of a certain claim(s) of ineffectiveness on direct appeal, while leaving other collateral issues for the more typical post-judgment scrutiny anticipated by *Grant*. This is an especially important observation when one considers the already significantly limited nature of collateral review, *via* the one-year jurisdictional time restriction.