J-S14042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LEALI PERKINS :
:
Appellant : No. 1127 EDA 2024

Appeal from the Judgment of Sentence Entered November 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008038-2021

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 6, 2025**

Appellant, Leali Perkins, appeals *nunc pro tunc* from the judgment of sentence[1] entered in the Court of Common Pleas of Philadelphia County following his conviction at a bench trial on the charges of burglary, criminal trespass, theft by unlawful taking, receiving stolen property, and criminal mischief.[2] After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with a home invasion, and on September 21, 2021, the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] As discussed *infra*, Appellant's direct appeal rights were reinstated via the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.

[2] 18 Pa.C.S.A. §§ 3502(a)(2), 3503(a)(1)(ii), 3921(a), 3925(a), and 3304(a)(2), respectively.

Commonwealth filed an Information charging him with the aforementioned crimes. On July 27, 2022, Appellant, represented by counsel, proceeded to a bench trial at which the Commonwealth presented the testimony of the victim, Latonya Scott, as well as Philadelphia Police Officer Knud Kristensen. Appellant offered no witnesses.

Ms. Scott testified that, on February 7, 2020, she was shopping when her neighbor called her to report she had "just seen [Appellant] coming out of [her] house" on Almond Street in Philadelphia. N.T., 7/27/22, at 14-16. The house had multiple rooms, but Ms. Scott had the sole efficiency apartment, which was located on the first floor. *Id.* at 23, 26, 31.

Ms. Scott testified that, in response to her neighbor's phone call, she rushed back to her residence and saw Appellant coming out of the house with trash bags. *Id.* at 16. Because he lived in one of the rooms with his brother, Ms. Scott recognized Appellant. *Id.* Ms. Scott indicated she saw Appellant with six trash bags, and she observed him putting the trash bags in the trunk of a car. *Id.* at 17. Ms. Scott testified as follows:

> When I came up he—he was putting [the bags] in the car, and I'm thinking well, I don't know—first, I was like okay, well, maybe he [is] moving. I mean, well, helping his brother move. I don't know.
>
> So, I was looking. I said, well, wait a minute. That stuff looks like my stuff. So, because [there] was stuff sticking out of the bag. I'm like, well, wait a minute. And I went back. He ran back into [the building]. [He] was coming out with my [stuff in] bags. I could not believe it.

*Id.*

Ms. Scott testified she snatched two trash bags containing her items from Appellant's hands; however, she was unable to recover the remaining four trash bags. *Id.* Specifically, she indicated Appellant had already placed four of the six trash bags in the trunk of a car, and when she confronted him, Appellant ran back inside the building while the driver of the car sped away. *Id.* Ms. Scott testified she did not give Appellant permission to enter her apartment or remove items from her apartment. *Id.* at 18.

Ms. Scott indicated that she went to her apartment and immediately noticed "her door was kicked in." *Id.* She clarified it was kicked off its hinges. *Id.* at 19. She looked around her apartment and found items missing, which she never recovered. *Id.* at 20. Specifically, the following items were missing: her television, a PlayStation console, food, candles, brand new shoes, and some of her clothes. *Id.* Ms. Scott indicated the value of these unrecovered items was $3,000.00. *Id.* Ms. Scott immediately telephoned the police to report the burglary. *Id.*

On cross-examination, Ms. Scott indicated that the building at issue had no water or electricity, and the landlord was trying to evict certain tenants. *Id.* at 24-25. Ms. Scott clarified that Appellant's brother had already moved, but she was not being evicted. *Id.* at 25. She testified she told the police Appellant was mad because of the landlord's actions, but he took it out on her. *Id.*

Police Officer Kristensen testified that, on February 7, 2020, he responded to a radio call for a burglary in progress on Almond Street, and upon arriving at the scene, he saw Ms. Scott standing outside of the house. *Id.* at 35. Ms. Scott informed him that a man had placed her belongings on the curb and then ran back into the house. *Id.* Ms. Scott advised the officer that the man "was behind a door to the right of the entryway." *Id.*

The officer knocked on the door and announced himself; Appellant opened the locked door. *Id.* Ms. Scott identified Appellant as the man she saw outside with her items in trash bags, and the officer arrested him. *Id.* at 36. Officer Kristensen identified Appellant in court as the man he arrested. *Id.*

On cross-examination, Officer Kristensen confirmed the door to Ms. Scott's apartment had been kicked in with the lock broken off the door. *Id.* at 44. He indicated that, when he arrested Appellant, he found on Appellant's person two candles belonging to Ms. Scott. *Id.* Officer Kristensen indicated that, when he was on the scene, there was no indication that the landlord had moved all of the tenants out of the home; however, there were "a bunch of bags" on the curb. *Id.* at 49.

At the conclusion of all testimony and evidence, the trial court convicted Appellant of the aforementioned crimes. The trial court deferred sentencing for the preparation of a presentence investigation report and mental health evaluation. On November 28, 2022, Appellant, represented by counsel,

proceeded to a sentencing hearing. The trial court sentenced Appellant to three and one-half years to seven years in prison for his burglary conviction, to be followed by five years of probation for his criminal trespass conviction. The trial court also imposed a concurrent term of five years of probation for his theft by unlawful taking conviction with no further penalty on the remaining charges. The trial court ordered Appellant to pay restitution. Appellant was properly provided with his post-sentence and appellate rights. N.T., 11/28/22, at 39.

Appellant did not file a post-sentence motion; however, on December 21, 2022, he filed a timely notice of appeal. On January 11, 2023, Appellant filed a counseled *praecipe* to discontinue his direct appeal.

On February 23, 2023, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel to represent Appellant, and counsel filed an amended PCRA petition seeking the restoration of Appellant's direct appeal rights *nunc pro tunc*. On March 14, 2024, the PCRA court granted Appellant's PCRA petition and reinstated his direct appeal rights *nunc pro tunc*.[3] This

_____

[3] We note it is well-settled that, if a PCRA petitioner successfully pleads and proves that he was deprived of the right to file and litigate post-sentence motions, a PCRA court is free to reinstate the petitioner's post-sentence motion rights *nunc pro tunc*. **Commonwealth v. Liston**, 602 Pa. 10, 977 A.2d 1089 (2009). However, where a defendant does not plead and prove his entitlement to the reinstatement of his post-sentence motion rights, he is not automatically entitled to the reinstatement thereof when his direct appeal rights are reinstated *nunc pro tunc*. **Id.**
*(Footnote Continued Next Page)*

timely, counseled appeal followed on April 10, 2023. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, counsel timely complied, and the trial court filed a Pa.R.A.P. 1925(a) opinion on June 21, 2024.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which Appellant was convicted?

2. Whether the Commonwealth's failure to provide exculpatory evidence in pretrial discovery constitutes prosecutorial misconduct?

3. Whether the sentencing court abused its discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of Appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. Section 9721 of the Sentencing Code?

Appellant's Brief at 8.

In his first issue, Appellant claims the evidence was insufficient to sustain "each and every element" of the crimes for which he was convicted. However, in the argument portion of his brief, aside from setting forth citations

---

Here, in its March 14, 2024, order, the PCRA court indicated it was reinstating Appellant's post-sentence motion rights and direct appeal rights *nunc pro tunc*. However, Appellant did not request the reinstatement of his right to file post-sentence motions. In any event, we note that, after the PCRA court indicated it was granting Appellant the right to file post-sentence motions and a direct appeal *nunc pro tunc*, Appellant did not file post-sentence motions. Rather, he filed the instant direct appeal *nunc pro tunc*.

for the general standard of review for sufficiency claims, Appellant's entire appellate argument regarding his first claim is as follows (verbatim):

The prosecution failed to sufficiently establish beyond a reasonable doubt the necessary proof of the commission of any crime by [Appellant]. The testimony of the complainant was directly contradicted by the testimony of Officer Kristensen. The complainant testified that Appellant stole four bags containing her personal property. Officer Kristensen testified that Appellant was only in possession of some candles that Ms. Scott claimed belonged to her. The four bags of personal property were not recovered from Appellant or placed into inventory by the responding officer. In addition, the complainant's initial statement to police directly contradicts her testimony at trial, as Ms. Scott never told police that any of her items were placed into Appellant's vehicle. Likewise, complainant Scott never provided any information in her initial interview with police acknowledging that Appellant lived in a separate residence at that location, or that all of the tenants were in the process of being evicted at the time of the alleged incident. Her initial interaction with Officer Kristensen was the complainant's first opportunity to report the details of her allegation with any specificity to anyone. The complainant's failure to state at that time that Appellant placed her four bags of her property into a vehicle significantly undermines her credibility. The complainant's statement to Officer Kristensen was on the same date as the alleged burglary and theft. The complainant's testimony at trial was thirty months after the alleged incident. The information provided to Officer Kristensen is closer in time to the alleged incident and more accurately reflects the complainant's immediate recollection. The testimony of Officer Kristensen proves that the complainant provided false testimony at trial when she stated that Appellant placed her belongings in his vehicle, despite having never made such statement at any time prior to trial, including her statement to Officer Kristensen and her testimony at the preliminary hearing.

The evidence offered by the Commonwealth is in contradiction to the physical facts, as proven by the testimony of Officer Kristensen regarding the complainant's failure to report that Appellant placed her property in his vehicle, as well as her failure to testify as such at the preliminary hearing. Likewise, the officer's testimony that some candles were the only items recovered from Appellant and identified by the complainant as her property also contradicts her statement that Appellant placed her

- 7 -

property in his vehicle. The evidence offered by the Commonwealth is also in contravention to human experience and the laws of nature, and [it] is insufficient as a matter of law. The Commonwealth failed to produce evidence to meet their burden of proof beyond a reasonable doubt, and the judgment of sentence should be vacated.

Appellant's Brief at 14-15.

Preliminarily, we remind Appellant that sufficiency and weight claims are clearly distinct. *See Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000) (discussing the distinctions between a claim challenging sufficiency of the evidence and a claim the verdict is against weight of the evidence).

> The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[ ] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict-winner. An allegation that the verdict is

against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.

*Widmer*, *supra*, 744 A.2d at 751-52 (footnote, quotation marks, and some citations omitted).

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the trial court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

Here, we conclude Appellant has not developed a proper sufficiency of the evidence claim. While he makes boilerplate allegations that the prosecution failed to sufficiently establish beyond a reasonable doubt the necessary proof of the commission of any crime by Appellant, he has not set forth the elements required for each offense, identified the relevant criminal statutes, cited relevant authority, or discussed the evidence relative thereto. *See* Pa.R.A.P. 2119(a)-(c). Thus, Appellant has hampered meaningful appellate review of his claim that the evidence was insufficient to establish each and every element of the crimes. *See Milby v. Pote*, 189 A.3d 1065 (Pa.Super. 2018) (indicating this Court will not develop an argument for an appellant or scour the record to find evidence to support an argument).

In any event, we agree with the Commonwealth that Appellant's argument "assails the weight of the evidence." Commonwealth's Brief at 6. As indicated *supra*, in the argument portion of his brief, Appellant challenges

the credibility of the victim on numerous grounds, including her trial testimony being allegedly inconsistent with Officer Kristensen's trial testimony, her initial statement to Officer Kristensen, and her preliminary hearing testimony. In this vein, his argument is more akin to a challenge to the weight of the evidence as opposed to a challenge to the sufficiency of the evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006) ("A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed.") (quotation omitted)).

Relevantly, Pennsylvania Rule of Criminal Procedure 607(A) requires a challenge to the weight of the evidence to be raised with the trial court in a motion for a new trial that is presented "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "Failure to properly preserve the claim will result in waiver[.]" *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) (citation omitted).

Here, Appellant did not file any post-sentence motions, let alone one challenging the weight of the evidence. Further, Appellant did not otherwise raise a challenge to the weight of the evidence in the trial court. Accordingly, to the extent he raises a weight of the evidence claim on appeal, the claim is waived. *See Commonwealth v. Priest*, 18 A.3d 1235 (Pa.Super. 2011).

In his next claim, Appellant contends the Commonwealth committed a *Brady*[4] violation by failing to disclose the entire video from the police body camera during the time Police Officers Zayas Francisco and Mark Brockington reported to an incident at the subject house earlier in the day.

The law governing *Brady* claims is well settled:

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

*Commonwealth v. Lambert*, 584 Pa. 461, 884 A.2d 848, 853-54 (2005) (internal citations and quotations omitted). "Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Lambert*, *supra*, 884 A.2d at 854 (citation omitted).

Here, during the cross-examination of Officer Kristensen, defense counsel played footage from a police body camera, and asked Officer

_____

[4]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

Kristensen about the footage. Officer Kristensen confirmed the footage at issue was from Officers Francisco's and Brockington's tour earlier in the day. N.T., 7/27/22, at 48. Officer Kristensen testified that the footage was "not related to the incident in question." *Id.*

In any event, defense counsel indicated "let the record reflect that I was provided body cam that was not related to the incident that does show, I believe, material evidence." *Id.* at 49.

On appeal, for the first time, Appellant claims the Commonwealth committed a *Brady* violation by providing "only a redacted version of the body-worn camera video" as opposed to disclosing "the entire video from the body-worn camera." Appellant's Brief at 17. Appellant avers the footage from Officers Francisco's and Brockington's tour earlier in the day reveals they talked to the landlord of the house about an earlier incident. During this conversation, the landlord established "Appellant and complainant Scott were tenants at the property and were in the process of vacating the property after being served with eviction documents." *Id.* at 16.

Assuming, *arguendo*, Appellant has preserved his *Brady* claim, we find no relief is due.

> Under *Brady*, prejudice occurs when a defendant shows a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In other words, the undisclosed evidence must be material to guilt or punishment.

*Commonwealth v. Conforti*, \_\_\_ Pa. \_\_\_, 303 A.3d 715, 730 (2023) (quotation marks and quotations omitted).

Here, Appellant reasons the landlord's statement that he and Ms. Scott were in the process of vacating the property pursuant to eviction notices establishes he was "legally at the property and had permission to remove items from the location." Appellant's Brief at 16.

We conclude that, assuming Appellant's argument is correct, the fact he was "legally" in the house and had permission to remove some items from the location does not give Appellant authority to kick in the door to Ms. Scott's apartment and remove her personal items without her permission. Simply put, Appellant has failed to demonstrate he was prejudiced by the prosecution's alleged failure to disclose, and, thus, he is not entitled to relief. *See Conforti*, *supra*.

In his final claim, Appellant claims his term of imprisonment is manifestly excessive since the trial court did not consider his prospect of rehabilitation or the mitigating factors as noted in 42 Pa.C.S.A. § 9721. He further contends the trial court placed too much emphasis on the gravity of the offenses. Appellant's claim presents a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912 (Pa.Super. 2010)

When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal.

***Commonwealth v. Yanoff***, 690 A.2d 260, 267 (Pa.Super. 1997). Prior to

reaching the merits of a discretionary sentencing issue,

> [this Court] conduct[s] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Taylor***, 137 A.3d 611, 618 (Pa.Super. 2016) (*en banc*).

In the instant case, as the Commonwealth argues, Appellant did not

preserve his discretionary aspect of sentencing claim.  ***See*** Commonwealth's

Brief at 11.

"Issues challenging the discretionary aspects of a sentence must be

raised in a post-sentence motion or by presenting the claim to the trial court

during the sentencing proceedings.  Absent such efforts, an objection to a

discretionary aspect of a sentence is waived." ***Commonwealth v. Lamonda***,

52 A.3d 365, 371 (Pa.Super. 2012) (*en banc*) (citation omitted).  In the case

*sub judice*, despite being advised of his post-sentence rights, Appellant did

not file a post-sentence motion. Moreover, Appellant did not present an

objection on this basis during his sentencing hearing.  Accordingly, we deem

this issue to be waived.[5]  ***See id.***

_____

[5] In any event, we note the trial court recognized Appellant had an offense gravity score of seven, as well as recognized the applicable guidelines ranges. *(Footnote Continued Next Page)*

For all of the aforementioned reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/6/2025

---

N.T., 11/28/22, at 36. The trial court specifically stated it was taking into account the need to protect the public, the gravity of the offenses, the impact the crimes had on the victim, and Appellant's rehabilitative needs. *Id.* at 35. The trial court stated it considered the presentence investigation report, the mental health evaluation, and the letter from Appellant's mother. *Id.* Accordingly, even if not waived, we conclude the trial court did not abuse its discretion, and, therefore, there is no merit to Appellant's discretionary aspects of sentencing claim. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005) (setting forth the standard of review for reviewing the merits of a discretionary aspect of sentencing claim).