J-S35041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH E. BALL, JR. | : | |
| | : | |
| Appellant | : | No. 76 WDA 2017 |

Appeal from the PCRA Order December 19, 2016
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000196-2015

BEFORE: LAZARUS, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 20, 2017**

Kenneth E. Ball, Jr. ("Appellant") appeals from the order entered in the Court of Common Pleas of Jefferson County dismissing his first petition for collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. Appellant contends the PCRA court erroneously rejected his claim that trial counsel ineffectively failed to file post-sentence motions or a direct appeal after the trial court imposed standard range sentences and ran them consecutively. We affirm.

The PCRA court aptly summarizes the pertinent history of the case as follows:

> [On March 13, 2015, Appellant approached a vehicle occupied by two males who were offering to sell drugs to Appellant's girlfriend, who had just gained her release from prison after

_____

[*] Former Justice specially assigned to the Superior Court.

serving a drug possession sentence.  Appellant punched through the driver side window, punched the driver, and then brandished a knife and threatened to kill one of the occupants.]

Declining the Commonwealth's plea offer [of six to 24 months less one day incarceration with a three-year probationary tail], . . .Ball [hereinafter "Appellant"] elected to go to trial, where a jury found him guilty of Terroristic Threats and two counts of Simple Assault.  The [trial court] imposed standard range sentences on all three[fn] and ran them consecutive to one another [resulting in an aggregate sentence of no less than three years, two months and twenty-nine days nor more than nine years' incarceration].  Appellant did not object at the time of sentencing or file post-sentence motions or an appeal thereafter.

___

[fn] On the charge of Terroristic Threats, the court imposed a fourteen month, twenty-nine day sentence of incarceration, which sat at the top of the standard range with application of the deadly weapon enhancement.  For each charge of Simple Assault, the court imposed a one to two year sentence, which sat at the middle of the standard range.

___

During his pre-trial discussions with Appellant, [John M.] Ingros, [Esq., the acting Public Defender of Jefferson County at the time] [hereinafter "counsel"] advised him that he would likely receive top-of-the guidelines or maximum consecutive sentences if he lost at trial.  Appellant accepted that risk and stood calmly as he listened to the verdict.  He then thanked his attorney and left the courtroom.  They did not discuss the upcoming sentencing hearing or what might occur thereafter, and in light of Appellant's pleasant demeanor throughout their attorney-client relationship, counsel assumed Appellant was "taking his lumps."

On the date of sentencing, the [trial court] orally delivered Appellant's post-sentence and appellate rights, which Appellant purported to understand. (Sentencing Transcript, 11/4/15 at 9. [Appellant] thus acknowledged that he had ten days to file written post-sentence motions on thirty days to file a direct appeal.  (*See id*.)  Because it was the [trial court's] pre-scheduled "plea and sentence court," however, Appellant and counsel did not have a chance to discuss the matter that day.

While awaiting transport from the Jefferson County Jail, Appellant did not hear from counsel. Counsel did not visit or write to review his options with him, and neither did Appellant contact counsel for that purpose. Appellant knew he could appeal, though. He knew even before his sentencing hearing, in fact, that a person could "always appeal," and the trial court supplemented that knowledge with the specific number of days he had to file post-sentence motions or a direct appeal and the acceptable medium.

Appellant did eventually write to counsel, but only to inquire about the terms of the offer he rejected and seek clarification on the terms of his sentence. He said nothing about wanting to appeal.

[At the PCRA evidentiary hearing, counsel testified that he understood that the court's standard range sentences were presumptively valid.] He also testified that he [understood] that the question of concurrent versus consecutive was discretionary to the court and that the court had articulated sustainable reasons for its decision to run Appellant's sentences consecutively in this case. (See N.T. 8/18/15 at 26-27). Although the sentence was significantly greater than what the Commonwealth had proposed in its offer, therefore, counsel did not believe the court had abused its discretion. Given that assessment, and also in light of his prior dealings with Appellant, therefore, counsel did not deem it necessary to reach out to his client to discuss appellate options.

PCRA Court Opinion, 12/19/16, at 1-2.

Appellant timely appealed from the PCRA court's order denying relief. He presents four issues that coalesce to charge error with the PCRA court's order rejecting his claim that trial counsel rendered ineffective assistance by neither filing post-sentence motions and a direct appeal challenging the discretionary aspects of his sentence nor consulting him about the prospects of such filings.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa.Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings; however, we give no deference to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa.Super. 2012). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. ***Commonwealth v. Abu–Jamal***, 553 Pa. 485, 527, 720 A.2d 79, 99 (1998).

To be entitled to PCRA relief, the defendant bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include ineffectiveness of counsel that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i) and (ii); ***see also Mason***, 130 A.3d at 618 (citations omitted).

Here, appellant contends trial counsel ineffectively failed to advise him about his appeal options after the court imposed a sentence much higher than what either the Commonwealth or the Probation Office recommended.

> Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3)

counsel's action or inaction resulted in prejudice to petitioner. With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. Failure to establish any prong of the [ ] test will defeat an ineffectiveness claim.

*Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (internal quotation marks and citations omitted).

The failure to file a *requested* direct appeal is *per se* ineffective assistance of counsel, regardless of the merits of the claims that the defendant sought to raise on appeal. *Commonwealth v. Lantzy*, 736 A.2d 564, 572 (Pa. 1999). A more difficult situation arises, however, when a defendant does not clearly express to counsel his desire to file a direct appeal. This Court addressed such a claim in *Commonwealth v. Touw*, 781 A.2d 1250, 1254 (Pa.Super. 2001), where, relying upon the United States Supreme Court's decision in *Roe v. Flores–Ortega,* 528 U.S. 470 (2000), we held:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts

> must take into account all the information counsel knew or should have known.
>
> ***Flores-Ortega***, at 480, 120 S.Ct. 1029. A deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must show prejudice. The [***Flores–Ortega***] Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." ***Id.*** at 484, 120 S.Ct. 1029.

***Touw***, 781 A.2d at 1254.[1]

Here, Appellant argues that counsel should have realized it would be rational for a defendant in his position to challenge a sentence greatly exceeding both the Commonwealth's plea offer and the Office of Probation's recommendation of six to twenty four months less one day incarceration, with three years' probation. Although the court's aggregate sentence comprised three standard range sentences, Appellant continues, his

---

[1] Further, there is "no significant distinction between the restoration of lost appellate rights and the restoration of lost post-sentence rights. That is, if a defendant has been deprived of his post-sentence rights through an omission of counsel or the court, the defendant should be able to redress that deprivation under the PCRA." ***Commonwealth v. Grafton***, 928 A.2d 1112, 1115 (Pa.Super. 2007). Nevertheless, the right to file post-sentence motions *nunc pro tunc* is not automatic even if the court grants the petitioner the right to file a direct appeal *nunc pro tunc.* ***Commonwealth v. Liston***, 977 A.2d 1089, 1094 (Pa. 2009). A PCRA court can reinstate a defendant's right to file post-sentence motions *nunc pro tunc* if the defendant successfully pleads and proves that he was deprived of the right to file and litigate post-sentence motions as a result of counsel's ineffectiveness. ***Id.*** at n. 9.

sentence for Terroristic Threats was one day short of the upper limit for a standard range sentence. Had counsel consulted with him after sentencing, he would have asked him to file a post-sentence motion seeking reconsideration of his sentence, Appellant claims, which would have also preserved the discretionary aspects of sentencing claim for a direct appeal. As it was, however, Appellant contends he did not understand how to go about filing post-sentence motions and a direct appeal.

The PCRA court responds that it clearly advised Appellant of his post-sentence motion and direct appeal rights, an assertion that the record supports. Moreover, the court directs us to the notes of testimony from Appellant's PCRA evidentiary hearing, in which counsel testified that he advised Appellant that rejecting the Commonwealth's plea offer only to incur a guilty verdict at trial would likely expose him to sentences at the top of the guideline ranges, up to statutory maximums, run consecutively. N.T., 8/18/15, at 23. Counsel interpreted Appellant's relatively calm reaction to his sentence and subsequent failure to request a direct appeal as a product of the warning counsel had previously given.

Counsel, likewise, testified that his nearly twenty years' experience as a public defender was that the imposition of standard range sentences, consecutively run, are presumptively appropriate and generally fail to raise a substantial question with regard to the court's sentencing discretion. This was particularly true, he posited, where, as here, the sentencing court supported its sentence by recounting both the particularly violent nature of

the crime at hand and Appellant's prior history of acting violently. Our jurisprudence supports counsel's testimony.[2]

Under the circumstances, we cannot conclude that counsel should have expected a rational defendant in Appellant's position to seek modification of his sentence through post sentence motions and, if need be, a direct appeal. Counsel advised Appellant that he risked such a sentence if he were to reject the Commonwealth's plea and unsuccessfully defend against the charges. The court stated pertinent reasons on the record to support running the standard range sentences consecutively. Appellant failed to ask counsel to file a motion challenging his sentence even after acknowledging in court that he understood it was his right to file a post-sentence motion, and counsel was familiar with jurisprudence highly

---

[2] "Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." **Commonwealth v. Gonzalez–Dejusus**, 994 A.2d 595, 598 (Pa.Super. 2010). "[T]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Lamonda**, 52 A.3d 365, 372 (Pa.Super. 2012).

Given the nature of Appellant's crimes and the standard range sentences imposed, counsel reasonably distinguished Appellant's sentence from those extreme, exceptional situations contemplated in **Lamonda**.

deferential to sentencing discretion where standard range sentences consecutively run do not result in an unduly harsh sentence under the facts.

While Appellant's sentence diverged significantly from the Office of Probation's recommendation, the recommendation was only advisory and but one consideration the sentencing court was to make. Notably, Appellant directs us to no caselaw vacating sentence because a court's sentence departed upward from a recommended sentence. Moreover, he supplies no further basis for the proposition that a rational defendant would have sought reconsideration of this sentence.

For these reasons, we find Appellant has not demonstrated that plea counsel had a duty to consult with him further regarding his post sentence rights.

Order is Affirmed.

Judge Lazarus joins the memorandum.

Judge Ransom notes dissent.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/20/2017