J-S28016-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBIN HICKMAN | |
| Appellant | No. 1043 WDA 2016 |

Appeal from the PCRA Order June 28, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010825-2011

BEFORE:   OLSON, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:                    FILED DECEMBER 27, 2017

Robin Hickman appeals from the June 28, 2016 order entered in the

Allegheny County Court of Common Pleas denying his petition filed pursuant

to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

We set forth the factual history of this case in our memorandum

affirming Hickman's judgment of sentence:

> This matter arises out of the shooting death of David
> Spahr [("Victim")] on November 15, 2010.    The
> Commonwealth established that [V]ictim was found shot to
> death while seated in the driver's seat of his vehicle on Bortz
> [W]ay in Swissvale, Pennsylvania.   [V]ictim had been shot
> at close range.  One bullet had entered the left side of his
> face and lodged in his right mandible.   A second bullet
> entered the left [side of his] chest and passed through
> various organs, including the aorta, and was recovered from
> the muscles of the right side of his body.  Ballistic analysis

_____

[*] Retired Senior Judge assigned to the Superior Court.

later established that the bullet taken out of [Victim]'s right mandible at autopsy had been fired by a .357 Taurus revolver. The Taurus revolver had been recovered by police during an investigation into a subsequent unrelated homicide of Charles Wooding[,] which occurred in March of 2011, also in Swissvale. During that investigation, [Hickman] was questioned by police and he ultimately led police to the Taurus revolver[,] which was found where it had been thrown into some weeds along a set of steps near the location of the Wooding shooting. Allegheny County ballistic experts matched the bullet taken from [Victim]'s body with the gun that had been used in the Wooding shooting. In addition, the Commonwealth established that a fingerprint found on the exterior passenger's side door of [Victim]'s vehicle matched the right little finger print of [Hickman].

The Commonwealth also offered at trial [Hickman]'s confession[,] which he made at the time of his arrest on July 28, 2011. [Hickman] was given his Miranda[ v. Arizona, 384 U.S. 436 (1966)] rights at police headquarters. In his confession, [Hickman] stated that on the day of the shooting he returned from work to his apartment and met with another individual Hashim Rashad [("Co-defendant")]. [Co-defendant] told [Hickman] that he was having problems with [Victim] over money. [Co-defendant] then asked [Hickman] to go with him to a meeting with [Victim] at which time [Co-defendant] wanted [Hickman] to shoot [Victim]. [Co-defendant] explained that he wanted [Hickman] to shoot [Victim] because [Victim] knew where [Co-defendant]'s mother worked and his family lived. [Co-defendant] then told [Hickman] to bring his gun, which [Hickman] then got from his apartment. [Co-defendant] and [Hickman] then proceeded to meet [Victim]. [Co-defendant] told [Hickman] that they were going to get into the . . . [Victim]'s vehicle truck [sic] and then [Hickman] was to shoot him. [Hickman] then recounted they met the . . . [Victim] and got into his vehicle, with [Hickman] sitting in the middle of the bench seat and [Co-defendant] on the far right near the passenger side door. However, they drove a short distance and ended up in an alleyway, where [Hickman] and [Co-defendant] exited the vehicle. At that time [Co-defendant] yelled at [Hickman] for not shooting the victim when they first got in the truck. [Hickman] and

[Co-defendant] then return[ed] to the vehicle at which point [Hickman] walked up to the vehicle and fired one shot and then turned and ran.  [Hickman] testified that as he was running he heard additional shots being fired and he continued running to his apartment where he hid the gun.

At trial, [Hickman] testified in his defense and recanted the confession, alleging that he was coerced into making it.  [Hickman] testified that he was introduced to [Victim] in November 2010 by another drug user known to him as Queenie.  Queenie told [Hickman] that [Victim] was looking for drugs and then, accompanied by Queenie, [Hickman] met [Victim] on a nearby street where [Victim] arrived in his vehicle.  [Hickman] testified that [Victim]:

> ". . . pulled up, [Queenie] hopped in the car with him to do the transaction, and I'm standing on the passenger's side.  We exchanged numbers, and he tells me to call him again anytime I have something good, he will spend some more money."

[Hickman] testified that several days later, he texted [Victim] again about meeting to buy drugs and ultimately met [Victim] in McKeesport, a day or two before the [sic] [Victim] was murdered.  [Hickman] testified that after the meeting in McKeesport, he never saw [Victim] again but that he did attempt to text him on November 15 and 16, but never got a response.

While [Hickman] denied shooting [Victim], [Hickman] admitted that he later came into possession of the Taurus revolver used in the [Victim] killing, but not until four months after [Victim] was killed.  [Hickman] testified that on March 15, 2011 he met Charles Wooding who told [Hickman] that he had a gun for sale at a low price. [Hickman] and Wooding exchanged phone numbers and planned on meeting later that day for [Hickman] to buy the gun.  Wooding and [Hickman] met later in the day on Westmoreland Avenue in Swissvale in front of an apartment building.  Wooding then asked [Hickman] to go inside to exchange the money for the gun.  [Hickman] testified:

"... once we go inside, we are on the second landing. I give him the money for the gun. He gives me the gun. When he's talking to me, he steps down from the landing with his back turned. When he turns around, pulls out a handgun. He tells me give it up, meaning give me everything I got. When he did this, I was in shock. I couldn't believe it. I stepped back and he cocks the gun back, meaning putting a bullet in the chamber, asks me do I think he's playing. I panic, I believe if I didn't pull the trigger to the revolver, I would have died that day."

[Hickman] testified that after he shot Wooding he ran out of the building through an alleyway and left by a set of steps where he threw the gun. [Hickman] admitted that he was later questioned by detectives about two weeks later concerning the incident. [Hickman] testified that he told the detectives that he had shot Wooding in self-defense and later took detectives to find the Taurus revolver. [Hickman] denied any involvement in the killing of [Victim].

Regarding his confession, [Hickman] testified that when he was taken into custody on July 28, 2011 he denied being involved in [Victim]'s murder and asked the arresting detectives to call his mother so he could get a lawyer. [Hickman] testified that the detectives left the room and later returned saying that they didn't have to call his mother. One of the detectives then allegedly grabbed the back of his neck and told him if he ever wanted to get out again he needed to sign the waiver of rights form presented to him. [Hickman] testified that he signed the form because he didn't believe he had a choice. [Hickman] testified that despite repeatedly telling the police he was not involved in the killing, "they got frustrated and on their way out -- they want to leave the interrogation, and on the way out the detectives pushed me onto the floor." [Hickman] testified that he was scared and "I would've said anything to get out of that room."

[Hickman] also presented the testimony of his father. Robin Hickman, Sr. who testified concerning his attempts to speak to his son when he had arrived at the police station on the day [Hickman] was arrested. Mr. Hickman[, Sr.]

- 4 -

testified that he questioned the officers and they told him they would be right back to talk to him about his son but then saw them leaving and he was never given the opportunity to speak to his son.

After being appropriately charged and during its deliberations, the jury requested that the taped confession be replayed. In addition, the jury requested additional instructions on first degree and third degree murder and conspiracy. The jury was reinstructed and the tape of the confession was played. After additional deliberations, [Hickman] was then found guilty . . . .

Commonwealth v. Hickman, No. 448 WDA 2013, unpublished mem. at 1-5 (Pa.Super. filed Oct. 29, 2014) (internal citations omitted).

On November 15, 2012, a jury convicted Hickman of third-degree murder, conspiracy – criminal homicide, and firearms not to be carried without a license.[1] On February 11, 2013, the trial court sentenced Hickman to an aggregate of 22 to 44 years' incarceration.[2] The next day, counsel sought to withdraw from representation. The trial court granted counsel's request on February 13, 2013 and appointed new counsel. No post-sentence motion was filed. Hickman filed a timely notice of appeal and, on October 29, 2014, this Court affirmed. Hickman petitioned for allowance of appeal and, on March 3, 2015, the Pennsylvania Supreme Court denied his petition.

_____

[1] 18 Pa.C.S. §§ 2502(c), 903(c), and 6106(a)(1), respectively.

[2] The trial court sentenced Hickman to 20 to 40 years' incarceration for third degree murder, a concurrent 20 to 40 years' incarceration for conspiracy – criminal homicide, and a consecutive 2 to 4 years' incarceration for firearms not to be carried without a license.

On February 29, 2016, Hickman filed a timely counseled PCRA petition. On June 28, 2016, following a hearing, the PCRA court denied Hickman's petition. On July 20, 2016, Hickman filed a timely notice of appeal. PCRA counsel filed an application for leave to withdraw as counsel. On May 30, 2017, private counsel entered his appearance on Hickman's behalf.[3]

On appeal, Hickman raises two issues: (1) he "was denied effective assistance of counsel at sentencing" and (2) he "was denied effective assistance of counsel during the post-sentence stage of his case." Hickman's Br. at 1.

Our review of an order denying PCRA relief is limited to determining "whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." Commonwealth v. Melendez–Negron, 123 A.3d 1087, 1090 (Pa.Super. 2015). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." Id.

_____

[3] On appeal, PCRA counsel, Charles R. Pass, III, Esquire, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and a petition to withdraw as counsel. While counsel should have filed a no-merit letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988) (en banc), "an Anders brief provides greater protection to a defendant[. Therefore,] this Court may accept an Anders brief in lieu of a Turner/Finley letter." Commonwealth v. Widgins, 29 A.3d 816, 817 n.2 (Pa.Super. 2011).

Hickman subsequently retained private counsel, who filed a brief. Accordingly, we grant Attorney Pass' petition to withdraw and we will consider only the brief filed by private counsel.

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." Commonwealth v. Ousley, 21 A.3d 1238, 1244 (Pa.Super. 2011) (quoting Commonwealth v. Rivera, 10 A.3d 1276, 1279 (Pa.Super. 2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." Id. "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." Commonwealth v. Washington, 927 A.2d 586, 594 (Pa. 2007).

## I. Ineffectiveness during sentencing phase

Hickman first claims that he was denied effective assistance of counsel during sentencing. He claims that trial counsel: (1) presented no mitigation factors pursuant to Miller v. Alabama, 567 U.S. 460 (2012); (2) failed to introduce exculpatory evidence – Co-defendant's statement that it was Co-defendant who killed Victim; (3) caused Hickman to receive a disproportionate sentence compared to Co-defendant; and (4) failed to object to improper comments and arguments by the Commonwealth.

### 1. Mitigation factors

Hickman claims that because he was a juvenile at the time of the offense, Miller mandated the application of certain sentencing factors. Hickman contends that trial counsel was ineffective for failing to present a mitigation expert or any evidence regarding these factors.

In Miller, the United States Supreme Court held that a sentence of life imprisonment without the possibility of parole is unconstitutional when imposed upon defendants who were "under the age of 18 at the time of their crimes." 567 U.S. at 465. The Court held that while it did not foreclose a trial court's ability to impose a sentence of life imprisonment without a possibility of parole, it did "require [the trial court] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480.

Hickman, however, was not subject to a mandatory sentence of life without parole; rather, the trial court sentenced Hickman according to subsection 2502(c) of the Crimes Code, which carries a statutory maximum of 40 years' incarceration. See 18 Pa.C.S. § 1102(d). Therefore, Miller is inapplicable to Hickman and the PCRA court did not err in finding that trial counsel was not ineffective for failing to address factors discussed in Miller.

2. Exculpatory evidence

Hickman next argues that trial counsel failed to introduce exculpatory evidence during sentencing. He claims that Co-defendant provided a statement to the police wherein he confessed to murdering Victim. Hickman contends that although the evidence was inadmissible at trial, trial counsel

was ineffective for failing to introduce it at sentencing. Hickman asserts that because the evidence was exculpatory, it was admissible at sentencing pursuant to Green v. Georgia, 442 U.S. 95 (1979).

The PCRA court stated:

> [Hickman argues] that counsel was ineffective for failing to present at the sentencing hearing the statement of [Co-defendant] of November 16, 2010 related to the killing of [V]ictim. [Co-defendant] was convicted by a jury on June 6, 2013 of voluntary manslaughter and tampering or fabricating of physical evidence related to the death of [Victim]. [Hickman] attached to his Memorandum in Support of PCRA Relief a copy of a statement given to police by [Co-defendant] on November 16, 2010, the day following the shooting. In his statement [Co-defendant] initially denied any involvement in [V]ictim's death, but later changed his story and stated that he was involved in an encounter with [V]ictim where [V]ictim pulled a gun on him and after a struggle for control of the gun, [Co-defendant] was able to point the gun at [V]ictim and fire a shot. He then exited the vehicle and fired twice more at [V]ictim. In the statement [Co-defendant] makes no reference to [Hickman].
>
> [Hickman] argues that counsel was ineffective for failing to present the statement at the sentencing hearing even though it had been ruled inadmissible during the trial. [Hickman] contends that the statement shows that it was [Co-defendant] who was the "actual killer." However, this argument is completely without merit because it simply ignores the fact that [Hickman] also confessed to being involved in the killing. Contrary to his assertion that he had absolutely no involvement in the killing, there was, in addition to his confession, physical evidence that connected [Hickman] to the shooting. This evidence included one of the guns used to shoot [V]ictim, as well as [Hickman]'s fingerprint found on [V]ictim's vehicle. The fact that [Co-defendant] did not refer to [Hickman] in the statement does not exonerate [Hickman]. In fact, the statement reflects that [Co-defendant] at first denied any involvement in the murder and then claimed it occurred after [V]ictim allegedly

> attacked him. In addition, it should be noted that at the time of [Hickman]'s sentencing, [Co-defendant] had not even been tried yet and, therefore, there is no indication that [Co-defendant] may not have recanted his confession, just as [Hickman] attempted to do. [Hickman] assumes that the statement would be viewed as an exoneration of [Hickman] and it would result in a lesser sentence. However, the statement directly contradicts the findings by the jury in [Hickman]'s case and would not have affected the sentence imposed.

Trial Ct. Opinion, 1/19/17, at 7-8 ("1925(a) Op.").

Further, Hickman's reliance on Green is misplaced. Green involved unique circumstances where: (1) in an out-of-court statement, a man who had been convicted for the killing for which Green was being tried, claimed that he, and not Green, was solely responsible; (2) the statement had indicia of reliability, including that it was spontaneously made to a close friend; and (3) the statement's admissibility was sought in a death penalty sentence phase before a jury. Green, 442 U.S. at 96-97. The United States Supreme Court held that "[t]he excluded testimony was highly relevant to a critical issue in the punishment phase of the trial . . . and substantial reasons existed to assume its reliability." Id. at 97. Under such unique circumstances, the Court held that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." Id. (quoting Chambers v. Mississippi, 410 U.S. 284, 302 (1973)).

Such "unique circumstances" were not present in Hickman's case. Further, regardless of the admissibility of Co-defendant's statement, as the PCRA court explained, the statement was not exculpatory and, in any event,

would not have affected Hickman's sentence.[4]  Therefore, the PCRA court did not err in finding that trial counsel was not ineffective for failing to move into evidence this statement.

### 3. Disproportionate sentence

Next, Hickman claims that counsel was ineffective in failing to challenge his sentence, which was "disproportionate to the sentence received by the actual killer, [Co-defendant]."  Hickman's Br. at 9.

The PCRA court found that:

> [Co-defendant] did not even proceed to trial until June 6, 2013, almost four months after [Hickman] was sentenced. [Co-defendant] was not sentenced until August 22, 2013, more than six months after [Hickman] was sentenced. [Co-defendant] was convicted of voluntary manslaughter. Clearly counsel could not be ineffective for failing to make an argument regarding a sentence for a different defendant who was convicted of a different offense, which was not even imposed at the time that [Hickman] was sentenced.

1925(a) Op. at 9.  We agree.  Accordingly, we conclude the PCRA court did not err in finding that trial counsel was not ineffective for failing to raise an argument that not only did not exist at the time of sentencing but also would have been unavailing in any event.

### 4. Commonwealth's statements

Hickman also claims that trial counsel was ineffective in failing to object to the Commonwealth's "false, improper, and inflammatory comments" during sentencing.  Hickman's Br. at 10.  Hickman argues that the Commonwealth

---

[4] We note that the PCRA court also presided at Hickman's trial and sentencing.

"insinuated" that he had murdered another person even though he had not

been convicted of that crime. Id.

The PCRA court found:

> [I]t was [Hickman] himself who raised the issue during the trial that the gun, which ballistic evidence connected to the death of [V]ictim, was used by [Hickman] in another shooting.[5] [Hickman] testified at trial that he used the handgun to shoot Mr. Wooding. The prosecutor's statement merely reiterated [Hickman]'s own testimony when he admitted his role in the shooting death of Charles Wooding. Counsel was pointing out not only [Hickman]'s lack of remorse, but his admitted history of gun violence and, the fact that the gun used in Wooding's killing was also used in the instant case. Counsel was not ineffective for failing to

_____

[5] During the trial, counsel questioned Hickman regarding what happened on March 15, 2011 and how he came into possession of the gun, and Hickman stated:

> Earlier in the day I met Charles Wooding through someone else I was hanging with at the time. He said he had a gun for sale for a low price. We exchanged numbers right there, called each other so he will know who [I] was and I will know who he was. We planned on meeting later on in the day. Later on he called me to meet up with him. I met him on Westmoreland Avenue, . . . . I'm thinking we are going to do the transaction in front of an apartment building, but he tells me to come inside. Once we go inside, we are on the second landing. I give him the money for the gun. He gives me the gun. When he's talking to me, he steps down from the landing with his back turned. When he turns around, he pulls out a handgun. He tells me give it up, meaning give me everything I got. When he did this, I was in shock. I couldn't believe it. I stepped back and he cocks the gun back, meaning putting a bullet in the chamber, asks me do I think he's playing. I panicked. I believed if I didn't pull the trigger to the revolver, I would have died that day.

N.T., 11/15/12, at 194-96.

> object to this statement and the statement was not considered in the sentencing . . . .

1925(a) Op. at 9-10. We agree and conclude the PCRA court did not abuse its discretion in finding that trial counsel was not ineffective for failing to object to the Commonwealth's statement.

Further, Hickman claims that trial counsel was ineffective in failing to object to the Commonwealth's arguments that: (1) Hickman showed no remorse with regards to Victim's death because the Commonwealth knew of Co-defendant's statement confessing to the police, and (2) Hickman "needs to pay for what he has seen and deserves the statutory maximum for murder in the third degree," because Hickman should be sentenced according to what he did as opposed to what he has seen. Hickman's Br. at 10 (emphasis in original).

The PCRA court found:

> [T]he Assistant District Attorney was clearly permitted to argue for a legal sentence, and [Hickman's] claim is meritless for the reasons set forth above regarding [Co-defendant]'s statement. The Assistant District Attorney was entitled to argue for a sentence consistent with the jury's verdict and within the appropriate guidelines.

1925(a) Op. at 10. We agree. Further, a review of the sentencing transcript reveals that the Commonwealth stated "[Hickman] needs to pay for what he has done and deserves the statutory maximum for murder in the third degree." N.T., 2/11/13, at 16 (emphasis added). Accordingly, we conclude Hickman's claims are meritless and the PCRA court did not abuse its discretion in finding that trial counsel was not ineffective.

II.    Ineffectiveness during post-trial phase

Next, Hickman claims counsel was ineffective in failing to file a post-sentence motion after Hickman requested that he do so.  Hickman claims that there was "exculpatory evidence and mitigation arguments that, if presented, would have provided a reasonable probability for a lesser sentence than the maximum third degree murder."  Hickman's Br. at 11-12.

Our Supreme Court has held that a claim raising trial counsel's alleged ineffectiveness for failure to file a post-sentence motion "does not fall within the limited ambit of situations where a defendant alleging ineffective assistance of counsel need not prove prejudice to obtain relief." Commonwealth v. Liston, 977 A.2d 1089, 1092 (Pa. 2009).  In Commonwealth v. Reaves, Reaves claimed that counsel was ineffective for failing to raise at the violation of probation ("VOP") hearing or in a post-sentence motion that the VOP court failed to state on the record its reasons for imposing its sentence.  923 A.2d 1119, 1122 (Pa. 2007).  The Court held that Reaves was required to show actual prejudice to prevail.  Id. at 1129-30.  Similarly, Hickman must prove that he suffered actual prejudice by trial counsel's failure to file a post-sentence motion.

Here, the PCRA court stated:

> [I]t is clear that [Hickman] has failed to establish that a motion for reconsideration of sentence would have resulted in a different and more favorable sentence.  . . . [T]he sentence was within the standard range, was based on a full consideration of the presentence report, the facts of the crime and the evidence presented at the sentencing hearing.  The various evidence proffered by [Hickman] as

- 14 -

discussed herein would not have resulted in an order modifying the sentence to a different or more favorable sentence. Therefore, [Hickman] has failed to demonstrate actual prejudice as a result of ineffective assistance of counsel.

1925(a) Op. at 7. We agree and conclude that Hickman failed to establish actual prejudice. Therefore, trial counsel was not ineffective in failing to file a post-sentence motion.

Order affirmed. PCRA counsel's petition to withdraw granted.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2017

_____

[6] We reject the Commonwealth's argument that we should quash Hickman's second brief, filed by private counsel. An appellant faced with a petition to withdraw has an immediate right to proceed pro se or with privately retained counsel. See Commonwealth v. Muzzy, 141 A.3d 509, 512 (Pa.Super. 2016) ("[U]pon the filing of counsel's petition to withdraw, the petitioner-appellant has the immediate right to proceed in the appeal pro se or through privately-retained counsel. This is not a new requirement; it is simply clarification of long-standing procedure.") (emphasis omitted and some emphasis added); Commonwealth v. Bynum-Hamilton, 135 A.3d 179, 184 (Pa.Super. 2016) (stating counsel's petition to withdraw must advise an "[a]ppellant of his absolute right to proceed pro se or with privately retained counsel.") (emphasis added). Further, as stated above, we considered only the brief filed by private counsel.