J-S20034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAY-C O'BRYAN MCGLUMPHY | : | |
| | : | |
| Appellant | : | No. 832 WDA 2021 |

Appeal from the PCRA Order Entered December 7, 2020
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003895-2017

BEFORE: NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: October 13, 2022**

Appellant, Jay-C O'Bryan McGlumphy, appeals *nunc pro tunc* from the order entered in the Erie County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm and grant counsel's petition to withdraw.

The PCRA court set forth the factual and procedural history of this case as follows:

> On June 6, 2016, at 9:31 p.m., the City of Erie Police Department responded to a report of shots fired on Lincoln Avenue near the Bayfront Parkway in Erie, Pennsylvania. When they arrived, they found Isiah Wiley dead in the driver's seat of a white 2003 Cadillac. There police interviewed Luis Lopez, who had been in the passenger seat when Wiley was killed. Lopez told police that an unknown assailant or assailants pulled over in another vehicle, fired several shots into the Cadillac, and fled the scene. The

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

bullets spared Lopez, but claimed the life of Wiley. Other witnesses described the vehicle carrying the shooter as dark in color. Police found three 9-millimeter shell casings and a bullet at the crime scene. The coroner ruled the victim's death a homicide.

Police later found a Taurus PT111 9-millimeter semiautomatic handgun at the scene of a separate incident on June 12, 2016. Detectives were able to lift a latent fingerprint from the gun. The Pennsylvania State Police (PSP) Crime Laboratory issued a report identifying the gun as the one which had fired the three 9-millimeter casings and the bullet from the Lincoln Avenue crime scene. PSP also identified the fingerprint found on the handgun as the left thumb print of [Appellant]….

On August 1, 2017, Police interviewed [Appellant regarding] the June 6, 2016, incident. [Appellant] told police that he was picked up that night by three others in a dark-colored SUV. [Appellant] and the other individuals found a white Cadillac in which Lopez was a passenger. They followed the Cadillac, lost it, but found it again near the 1000 block of Lincoln Avenue near the Bayfront Parkway. The other individuals in the vehicle handed [Appellant] a loaded gun and directed him to fire at the Cadillac. He fired the gun six or seven times, at which point he noticed the victim slumped over in the driver's seat. [Appellant] had been 17 at the time of the incident.

On October 27, 2017, [Appellant] was charged with several counts related to the June 6, 2016, incident, including criminal homicide, murder in the first degree, criminal conspiracy to commit murder in the first degree, aggravated assault, recklessly endangering another person, possession of an instrument of crime, possession of a firearm by a minor, firearms not to be carried without a license, and criminal attempt at murder in the first degree. The Commonwealth maintained that, although Wiley was the ultimate victim of the shooting, Lopez had been the intended target. (**See** N.T. Sentencing, 12/12/18, at 18).

On November 1, 2017, Attorney Keith H. Clelland was appointed to represent [Appellant] on the charges related to the June 6, 2016, incident. On March 6, 2018, Attorney

Clelland filed an omnibus pre-trial motion for relief on behalf of his client, seeking recognition of an alibi defense, decertification of the case to juvenile court, access to [Appellant's] juvenile record, and a psychological evaluation. On April 5, 2018, the [trial court] granted the motion in part, permitting Attorney Clelland access to [Appellant's] juvenile record, and allowing Attorney Clelland further time for discovery. Subsequently, [on July 3, 2018,] Attorney Clelland filed a formal motion to decertify the case to juvenile court and [the trial court] ordered a psychological evaluation.

The evaluation revealed a troubled past, including an extensive juvenile record dating back to 2012, and placement in several juvenile programs as an adjudicated delinquent where he twice absconded. The evaluator noted that "[i]nformation generated from the subject's psychological testing, clinical interview and records review do not support [Appellant's] amenability to treatment within the juvenile justice system" and consequently opined that "[Appellant] lacks the necessary insight and motivation for juvenile rehabilitation." On August 28, 2018, a hearing was held…on the motion to decertify. On September 24, 2018, [the trial court] denied the motion.

By letters dated July 18, 2018, and October 5, 2018, [Appellant] requested that [the trial court] appoint him new counsel. On October 10, 2018, Attorney Clelland filed a motion to withdraw representation. Attorney Clelland's motion indicated he "continuously had to pull teeth to get any sort of response" from his client. ([Motion to Withdraw Representation, filed 10/10/18]). Attorney Clelland further stated that [Appellant] undermined his representation "and in fact flagrantly goes out of his way to make a case even more difficult." (*Id.*) On October 11, 2018, [the trial court] denied the motion to withdraw, noting no further request for a change of counsel would be entertained by the court.

On October 19, 2018, [Appellant] entered into a plea agreement, pleading guilty to murder of the third degree, possession of an instrument of crime, and possession of a firearm by a minor. Sentencing occurred on December 12, 2018. Prior to sentencing, the Commonwealth informed [Appellant] of his right to file a post-sentence motion or an

appeal and the time periods in which he would have to do so.  (N.T. Sentencing at 5-6).

During the sentencing hearing, [the trial court] addressed a letter sent by [Appellant] to the court where he maintained his innocence, claiming he was taking the blame for someone else.  (*Id.* at 8-9).  To the extent that [Appellant] was requesting to [w]ithdraw[] his guilty plea, [the trial court] denied the request, noting [Appellant] had already admitted in open court when he entered his plea that he fired the bullets that caused the death of the victim.  (*Id.* at 9).  [The trial court] then proceeded to sentence [Appellant] to an aggregate period of 25 to 50 years of incarceration plus restitution and costs.  (*Id.* at 32).  Neither a post-sentence motion nor a notice of appeal was timely filed on [Appellant's] behalf.

On May 9, 2019, the clerk of courts received a letter dated May 6, 2019, asking about the status of an appeal.  On June 12, 2019, the clerk of courts received a similar letter from [Appellant] in which he inquired on how to conduct his own appeal.

On December 16, 2019, [Appellant] filed the present PCRA petition *pro se*, claiming: a) violation of the Constitution of this Commonwealth or the laws of the United States which so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place, b) ineffective assistance of counsel which so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place, c) a plea of guilty unlawfully induced where the circumstances make it likely that inducement caused him to plead and he is innocent, and d) improper obstruction of government officials of his right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court. (*See Pro se* PCRA Petition, 12/16/19, at 2).  On March 5, 2020, [Appellant], by and through PCRA counsel, filed an amended PCRA petition, limited to the ineffective assistance of counsel claim.  (*See* Amended Petition for Post-Conviction Relief, 3/5/20).  On April 6, 2020, the Commonwealth filed a response.

On September 18, 2020, an evidentiary hearing was held on

- 4 -

the PCRA petition. Both [Appellant] and Attorney Clelland testified. At the close of the evidentiary hearing, the [c]ourt made initial factual findings and took the matter under further advisement. (N.T. PCRA Hearing, 9/18/20, at 37). On December 7, 2020, [the PCRA court] issued an Opinion and order to dismiss PCRA pursuant to Pa.R.Crim.P. 908, denying the relief sought and dismissing the petition.

[Appellant] did not initially appeal that decision. On March 23, 2021, [Appellant] penned a letter to the Erie County Clerk of Courts claiming that his PCRA counsel informed him he "had to write her a letter to give her [permission] to file an appeal to the Superior Court" and further alleging that he tested positive for COV1D-19 on January 1, 2021, and as a result, he was confined to the medical block and could not communicate with PCRA counsel to indicate his desire to file an appeal before the time to do so had expired. (Letter, 3/23/21). In the letter, he unequivocally stated that he "would like to get [his] appeal rights back so [he] can appeal [his] PCRA to the Superior Court." (*Id.*) On April 8, 2021, the court informed both PCRA counsel and the Commonwealth of the letter, putting the parties on notice of [Appellant's] desire to reinstate his appellate rights. On June 15, 2021, the Commonwealth indicated to the court that it did not object to the reinstatement of [Appellant's] appellate rights *nunc pro tunc*. By order dated June 22, 2021, the court treated the March 23, 2021, letter as a motion to reinstate appellate rights *nunc pro tunc* and granted the motion, providing that [Appellant], by and through counsel, would have 30 days in which to file a notice of appeal of the court's dismissal of the PCRA petition with the Superior Court.

[Appellant timely] filed a [*nunc pro tunc*] notice of appeal on July 16, 2021. That same day, [the PCRA court] ordered [Appellant] to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 3, 2021, PCRA counsel filed a statement of intent to file an **Anders**/**McClendon**[2] brief in lieu of a 1925(b) statement, **see** Pa.R.A.P. 1925(c)(4), and indicating that

_____

[2] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

after performing a thorough review of the file and transcripts, she found there to be no issues of merit to raise on appeal.…

(PCRA Court Opinion, filed 8/24/21, at 1-6) (some record citations omitted).

Preliminarily, appellate counsel has filed a petition for leave to withdraw as counsel, together with an **Anders** brief. Before counsel can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file a "no-merit" brief or letter. **Commonwealth v. Karanicolas**, 836 A.2d 940, 946 (Pa.Super. 2003).

> [C]ounsel must…submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and motion to withdraw and advise petitioner of his right to proceed *pro se* or with privately retained counsel. **Id.** "Substantial compliance with these requirements will satisfy the criteria." **Karanicolas, supra** at 947.

Instantly, counsel filed with this Court a petition to withdraw and a no-merit brief.[3] Counsel's brief details the nature of her review and explains why

---

[3] Where PCRA counsel requests to withdraw, the appropriate filing is a "no-merit" letter/brief per **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). Here, counsel mistakenly designated her no-merit brief as one

Appellant's claims lack merit. Counsel's brief also demonstrates that she examined the certified record and found no meritorious issues for appeal. Counsel notified Appellant of the request to withdraw and advised Appellant of his rights. Thus, counsel has substantially complied with the ***Turner***/***Finley*** requirements. ***See Wrecks, supra***; ***Karanicolas, supra***. Accordingly, we proceed to an independent evaluation of the record. ***See Turner, supra*** at 494-95, 544 A.2d at 928-29 (stating appellate court must conduct independent analysis and agree with counsel that appeal is frivolous).

Counsel raises the following issue on Appellant's behalf:

> Whether the PCRA court erred when it denied Appellant's PCRA petition and supplemental PCRA petition?

(***Turner***/***Finley*** Brief at 3).[4]

Appellant argues there was a breakdown in the attorney-client relationship between Appellant and plea counsel. Appellant asserts plea counsel was ineffective for failing to file post-sentence motions on Appellant's behalf. Likewise, Appellant insists plea counsel was ineffective for failing to file a direct appeal on his behalf. Appellant further suggests plea counsel

---

pursuant to ***Anders***. Nevertheless, we can accept an ***Anders*** brief in lieu of a ***Turner***/***Finley*** brief where counsel seeks to withdraw on appeal. ***See Commonwealth v. Fusselman***, 866 A.2d 1109, 1111 n.3 (Pa.Super. 2004), *appeal denied*, 584 Pa. 691, 882 A.2d 477 (2005).

[4] Appellant has not filed a responsive brief *pro se* or with newly-retained counsel. Nevertheless, on March 9, 2021, Appellant filed a *pro se* response to counsel's petition to withdraw, agreeing that the court should permit counsel to withdraw, and requesting a copy of his client file.

improperly induced him to plead guilty. Appellant concludes plea counsel rendered ineffective assistance, and this Court must grant relief. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019),

*appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

Regarding Appellant's first allegation of ineffectiveness, that counsel failed to file post-sentence motions on his behalf, we note that the failure to file a post-sentence motion does not automatically give rise to a presumption of prejudice. Rather, where counsel fails to file post-sentence motions, the traditional three-prong test applies to determine whether counsel was ineffective. ***Commonwealth v. Reaves***, 592 Pa. 134, 923 A.2d 1119 (2007) (holding defendant must satisfy traditional three-prong ineffectiveness test concerning counsel's failure to file post-sentence motions). ***See also Commonwealth v. Liston***, 602 Pa. 10, 16, 977 A.2d 1089, 1092 (2009) (emphasizing that "the failure to file post-sentence motions does not fall within the limited ambit of situations where a defendant alleging ineffective assistance of counsel need not prove prejudice to obtain relief"). Therefore, an appellant bears the burden of establishing that counsel's failure to file a post-sentence motion prejudiced him; namely, that his "counsel's performance was deficient" and that the "deficient performance prejudiced the defense." ***Reaves, supra*** at 147, 923 A.2d at 1127.

Notably, in general, an appellant who pleads guilty may only challenge the jurisdiction of the court, the legality of the sentence, and the validity of

the guilty plea on appeal. ***Commonwealth v. Morrison***, 173 A.3d 286, 290 (Pa.Super. 2017). "[W]hen 'the plea agreement contains a negotiated sentence which is accepted and imposed by the sentencing court, there is no authority to permit a challenge to the discretionary aspects of that sentence.'" ***Id.*** (quoting ***Commonwealth v. Reichle***, 589 A.2d 1140, 1141 (Pa.Super. 1991)).

Instantly, Appellant cannot establish that he was prejudiced by counsel's failure to file a post-sentence motion.[5] The court sentenced Appellant to an agreed upon aggregate sentence of 25-50 years' imprisonment following his guilty plea. Because the court imposed the negotiated sentence, Appellant would not have been permitted to challenge the discretionary aspects of his sentence. ***See Morrison, supra***. In addition, prior to sentencing, the court considered a *pro se* letter from Appellant as a request to withdraw his plea, and denied that request, stating:

> I'm not going to let you withdraw your plea…for a number of reasons. When you stood before me for your plea I asked you, and to put it bluntly, I asked if you pulled the trigger that injected the lead that went into the [victim's] body and caused his death and under oath to me in this solemn place you said yes. That's the end of it.

(N.T. Sentencing, 12/12/18, at 9). On this record, Appellant cannot prove

---

[5] We note that at the PCRA hearing, Attorney Clelland testified that Appellant "never asked [him] to file any post-sentence motion." (N.T. PCRA Hearing, 9/18/20, at 15). The PCRA court found Attorney Clelland's testimony credible. (***See*** PCRA Court Opinion at 14).

that he was prejudiced by counsel's failure to file a post-sentence motion, and he cannot establish ineffective assistance of counsel on this ground. *See Reaves, supra*; *Sandusky, supra*.

Regarding Appellant's claim that counsel was ineffective for failing to file a direct appeal on his behalf, we observe that the "[a]ctual or constructive denial of the assistance of counsel…falls within a narrow category of circumstances in which prejudice is legally presumed." *Commonwealth v. Lane*, 81 A.3d 974, 978 (Pa.Super. 2013), *appeal denied*, 625 Pa. 658, 92 A.3d 811 (2014). Our Supreme Court has held:

> [W]here there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii). Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.

*Commonwealth v. Lantzy*, 558 Pa. 214, 226-27, 736 A.2d 564, 572 (1999) (internal footnote omitted). In other words, if counsel neglects to file a **requested** direct appeal, "counsel is *per se* ineffective as the defendant was left with the functional equivalent of no counsel." *Commonwealth v. Markowitz*, 32 A.3d 706, 715 (Pa.Super. 2011), *appeal denied*, 615 Pa. 764, 40 A.3d 1235 (2012).

- 11 -

Even if a defendant does not expressly ask counsel to file a direct appeal, counsel still has a duty "to adequately consult with the defendant as to the advantages and disadvantages of an appeal **where there is reason to think that a defendant would want to appeal**." *Commonwealth v. Bath*, 907 A.2d 619, 623 (Pa.Super. 2006), *appeal denied*, 591 Pa. 695, 918 A.2d 741 (2007) (emphasis added). Where the defendant did not request counsel to file a direct appeal but counsel failed to consult with the defendant, counsel is not *per se* ineffective and the court applies the traditional three-prong test "to decide whether counsel rendered constitutionally ineffective assistance by failing to advise [the] client about his appellate rights." *Markowitz, supra* at 716.

> Pursuant to [*Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) and its Pennsylvania expression, *Commonwealth v. Touw*, 781 A.2d 1250 (Pa.Super. 2001)], counsel has a constitutional duty to consult with a defendant about an appeal where counsel has reason to believe either "(1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Touw*[*, supra*] at 1254 (quoting *Roe*[*, supra*] at 480, 120 S.Ct. [at 1036]).

*Bath, supra* at 623. "Where a petitioner can prove either factor, he establishes that his claim has arguable merit." *Markowitz, supra* at 716. Prejudice in this context means a defendant must show a reasonable probability that, but for counsel's failure to consult, the defendant would have sought additional review. *Touw, supra* at 1254.

Instantly, at the PCRA hearing, Appellant admitted that he never asked Attorney Clelland to file an appeal after sentencing. (N.T. PCRA Hearing at 7). Instead, Appellant claims he asked counsel to file an appeal prior to sentencing, stating: "I asked him the whole time I was in the county. I asked him to put a motion in to suppress evidence, direct appeal, which he never put no direct appeal in." (*Id.*) Appellant explained that when he wrote a letter to the clerk of courts asking about the status of his appeal, that was an inquiry "to figure out how to get one." (*Id.* at 8).

By contrast, Attorney Clelland testified that Appellant "never asked [him] to file an appeal." (*Id.* at 15). The PCRA court found Attorney Clelland's testimony credible. (*See* PCRA Court Opinion at 14). We see no reason to disrupt the court's credibility determination in favor of Attorney Clelland. *See Dennis, supra*. Thus, Appellant has failed to establish that counsel was *per se* ineffective for failing to file a requested direct appeal. *See Lantzy, supra*; *Markowitz, supra*.

The PCRA court also found that Appellant did not establish Attorney Clelland's ineffectiveness for failing to consult with Appellant about the possibility of an appeal. The court credited Attorney Clelland's testimony that he discussed post-sentence and appellate procedures generally with Appellant. Attorney Clelland acknowledged that he did not specifically discuss the merits of an appeal with Appellant, but if he had done so, he would have advised against an appeal as there were no meritorious issues to appeal. The

PCRA court credited plea counsel's testimony and concluded that Appellant failed to establish Attorney Clelland's ineffectiveness regarding counsel's duty to consult. The record supports the PCRA court's credibility determination in favor of Attorney Clelland, and the court's analysis. *See Dennis, supra*. *See also Bath, supra*.

With respect to Appellant's final claim that Attorney Clelland rendered ineffective assistance by inducing him to enter a guilty plea, we observe that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." *Commonwealth v. Patterson*, 143 A.3d 394, 397 (Pa.Super. 2016) (citations and internal quotation marks omitted). "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* (quoting *Commonwealth v. Kersteter*, 877 A.2d 466, 468 (Pa.Super. 2005)).

Here, Appellant was facing first degree murder and related charges for the shooting of Mr. Wiley. Appellant confessed to the crime and his fingerprints were on the murder weapon. (*See* N.T. Sentencing at 10). Further, Attorney Clelland explained at the evidentiary hearing:

> …I got a letter from [Appellant] in October asking me to arrange a plea bargain. And he had given me permission – he had waived confidentiality, so I could speak to his family. I went to his family and I said, I am – do not believe I can

win this trial. I said, if I lose, he will spend the rest of his life in prison. I said, will you speak to him about taking a third degree murder. They did. They said they would. And in fact, they did. I have a copy of the letter they sent. They said, please, listen to [Attorney Clelland]. Please take the plea, we want you to get out of jail at some point in your life. He thereafter took it and that's where my mind thought was....

(N.T. PCRA Hearing at 25-26). On this record, there is no arguable merit to Appellant's claim of ineffectiveness for inducing his guilty plea. ***See Patterson, supra***. ***See also Sandusky, supra***.

Following our independent review of the record, we agree with counsel that there are no other non-frivolous issues on appeal. ***See Turner, supra***. Accordingly, we affirm and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2022

- 15 -